## In the
# United States Court of Appeals
## For the Seventh Circuit

No. 05-2787

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

GLENN LANGE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 CR 764—**David H. Coar**, *Judge.*

ARGUED APRIL 7, 2006—DECIDED APRIL 28, 2006

Before FLAUM, *Chief Judge*, and POSNER and EASTERBROOK, *Circuit Judges.*

FLAUM, *Chief Judge.* Glenn Lange plead guilty to distributing child pornography. He claims that he amassed his collection of pornographic photographs because his "Asperger's-like" disorder made him unable to control his compulsion to do so. He requested a downward departure on the basis of diminished capacity, which the district court denied. After reviewing the sentencing factors in 18 U.S.C. § 3553(a), the district court sentenced Lange to 55 months imprisonment, a sentence within the advisory Guidelines range. He appeals, claiming that the sentence was unreasonable. For the following reasons, we now affirm.

## I.  Background

Glenn Lange, a resident of Lyons, Illinois, sent several e-mails containing child pornography images to an undercover FBI agent in December 2002. The FBI located him and obtained a warrant to search his residence in August 2003. Lange was present during the search, and admitted to agents that he was obsessed with child pornography since obtaining his personal computer; indeed he claimed it was the first thing he looked for when he got online. He gave agents consent to use his online identity. When they did so, they discovered a number of e-mails that Lange had written. In these e-mails, Lange described fantasies that he had about a nine-year-old relative. Interviews with the relative revealed that Lange had never actually harmed her.

The agents sent Lange's computer for forensic analysis. The analysis revealed approximately 28,000 images, roughly 20,000 of which were child pornography. The majority of the child pornography on the computer depicted girls and boys between the ages of five and twelve. Some of the images were sadistic in nature.

In early 2004, Lange was charged with nine counts of knowingly distributing images of child pornography and one count of knowingly possessing child pornography. On March 31, 2004, he plead guilty to one count of distributing child pornography.

During the sentencing proceedings, Lange argued for a reduced sentence on a number of grounds, including diminished capacity. Under the 2003 version of the Guidelines, § 5K2.13 stated:

> A sentence below the applicable guidelines range may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the com-

mission of the offense. Similarly, if a departure is warranted under this policy statement, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.

The application note to § 5K2.13 defines "significantly reduced mental capacity" as having significantly impaired ability to (1) appreciate the wrongfulness of the behavior constituting the offense or to exercise the power of reason; or (2) control behavior that the defendant knows is wrongful. Lange has never argued that he did not appreciate the wrongfulness of his behavior or that he could not exercise the power of reason; he instead bases his argument on the control prong of the diminished capacity test.

The defense presented evidence that Lange qualified for this downward departure because he suffered from a syndrome akin to Asperger's Syndrome. Asperger's Syndrome is essentially a mild form of autism. Lange argues that he suffers from this disorder or some variant of it and that the disorder impaired his ability to control his compulsion to amass his large collection of child pornography.

In support of this theory, the defense called two witnesses: Dr. Steven Rothke and Dr. Eliezer Margolis. Dr. Margolis was Lange's treating psychologist since August 2003, when the FBI investigation prompted him to seek treatment. Although Margolis did not perform cognitive testing on the defendant, Margolis testified that he believed that Lange lacked the ability to control his pornography-collecting behavior. Margolis believed that Lange suffered from an "Asperger's-like" syndrome, which impaired his ability to function and monitor himself cognitively and volitionally. Margolis testified that these deficits, when mixed with computer technology, allowed Lange to become

hypnotically drawn into "the internet world." During this state, Margolis testified that Lange would lose the sense of himself and become unable to comprehend beyond that moment in time. He also testified that in his opinion, the fantasy e-mails were not about a relative, but were fictional role-play that Lange obtained from a website. Moreover, Margolis stated that he did not believe that Lange should be classified as a pedophile.

Margolis further elaborated his theory when he testified as a rebuttal witness. He reiterated his claim that Lange had an executive functioning impairment as a result of an "Asperger's-like" syndrome. That executive functioning impairment, Margolis testified, caused Lange under certain conditions to "ha[ve] a disconnection among the parts of his self, and that executive functioning would describe the ability to keep those parts of one's self integrated in relation to one another so they could all work together." The district court then directly asked Dr. Margolis whether Lange suffered from a cognitive impairment, which prior testimony had established would include the brain's control mechanisms. Margolis responded that although Lange had not tested positive for cognitive disabilities, such tests do not always detect problems with executive functioning.

The defense also offered the testimony of Dr. Steven Rothke. Rothke testified that he had evaluated Lange at the request of Dr. Margolis. His evaluation, he stated, revealed nothing inconsistent with Margolis's diagnosis of "Asperger's-like" syndrome. Dr. Rothke also testified that he believed that tests administered by the government's psychological expert did not indicate that Lange was a sexual predator. Most relevant to the dispute on appeal, Rothke testified on cross-examination that his tests reflected that Lange was "cognitively intact" and that his executive functioning, including his ability to control behavior, was not impaired.

The government called its own psychologist, Dr. Diana Goldstein. She testified that her independent evaluation of Lange caused her to believe that his cognitive functions were intact and that he could control his behavior. Goldstein disagreed with Margolis's "Asperger's-like" diagnosis, and noted that Lange did not meet the criteria for Asperger's Syndrome as laid out in the most recent edition of the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, the most common reference tool for psychological disorders. She noted that Lange displayed strong nonverbal communication skills, which is quite uncharacteristic of a person suffering from Asperger's Syndrome. She also testified that she had diagnosed Lange with non-exclusive pedophilia based on the investigative file in the case.

After hearing the testimony, the district court stated, "Despite Dr. Margolis's testimony, I do not find that there is any evidence of a cognitive impairment. The testing indicated that, and indeed the testimony was that, there was not cognitive impairment and that Mr. Lange can control himself." The court then refused to depart downward based on diminished capacity, stating that the evidence was "woefully inadequate" to support such a departure. The court also refused the defendant's other arguments for a downward departure, because it believed, after reviewing the § 3553(a) factors, that "the guidelines have it about right." The court sentenced Lange to the high end of the Guidelines range, 55 months.

## II. Discussion

Lange's argument on appeal is essentially that the district court misapprehended his diminished capacity argument. He focuses quite a bit on the district court's comments that indicate that the court doubted that Lange's disorder fits the psychological community's current definition of Asperger's Syndrome. The district court did make

such a statement; indeed the statement is arguably correct, as even Lange concedes. The issue in this case, Lange points out, is not whether he suffers from a defined disorder, but whether he was impaired in his ability to control his actions.

We agree that this is the proper focus of the inquiry under the Sentencing Guidelines. Unlike Lange, however, we believe that the district court fully apprehended the relevant issue when ruling against Lange's diminished capacity arguments. The court's questions and statements during the two-day sentencing hearing dispel any notions to the contrary.[1] Judge Coar understood and acknowledged Dr.

---

[1] The following are direct quotes from Judge Coar during the sentencing hearings:

> [Spoken after dismissing the defense's first witness, Dr. Rothke] "Folks, let me just try to bring this back to the center because I think we're getting far afield.

> "Under our system of jurisprudence it is not criminal behavior nor is it properly a factor for sentencing to have thoughts about criminal conduct. It's action that is punished. Let me remind everybody as to what the issue is. The defendant has moved for a departure based on diminished mental capacity.

> "As I understand the defendant's position, the defendant has the burden of showing that he had a significantly impaired capacity to control his conduct at the time of the offense. That's the issue. And that capacity has to be a contributing cause of the offense. That's what we're talking about here. And there is a lot of very interesting psychological information that's been provided. Most of it has nothing to do with that issue. So if we could confine ourselves to the issue at hand, that would be helpful."

> [Questioning Dr. Margolis] "You heard me articulate what the psychological issue was, whether or not he had an impaired capacity to control his conduct at the time of the

(continued...)

Margolis's testimony that Lange's mental constitu-
tion affected his ability to control his pornography-collecting
behavior, yet disagreed. That alone does not indicate that
he misapprehended the nature of the argument.

Lange claims that two cases support his position in this
matter. They do not. The first, *United States v. Cun-
ningham*, 429 F.3d 673 (7th Cir. 2005), merely holds that a

---

[1] (...continued)
offense. That's the question.

"All right. Now, I read your report, but let me ask you to state
succinctly what has Asperger's Syndrome to do with that
question."

[Questioning Dr. Margolis during rebuttal testimony] "The
United States Sentencing Commission defines what we're
addressing here is whether or not Mr. Lange has a sig-
nificantly reduced mental capacity as including both a
cognitive and volitional impairments which are connected
to the offense.

"Now, as I understand the testing, indeed as I understand
all of the expert testimony, Mr. Lange suffers from no
cognitive impairment. Do you agree with that?"

[While making his sentencing ruling] "With respect to the
departure for diminished capacity, I indicated early on during
these proceedings what the standard was. I don't think that
there is any serious dispute with respect to what the stan-
dards are. The evidence here is I think woefully short of
meeting the requirements of the guidelines. And as I said,
significantly reduced mental capacity includes both cognitive
and volitional impairments which are connected to the
offense.

"Despite Dr. Margolis's testimony, I do not find that there
is any evidence of cognitive impairment. The testing indicated
that, and indeed the testimony was that there was
no cognitive impairment and that Mr. Lange can control
himself. . . ."

district court must address a defendant's psychological problems if they are offered by the defense as a mitigating factor during sentencing. The district court in this case not only addressed Lange's condition, but held two days of hearings on the matter. *See United States v. Brock*, 433 F.3d 931, 937 (7th Cir. 2006) ("Unlike in *Cunningham*, in this case the district court's reasoning is supported by the record.") The second, *United States v. Lighthall*, 389 F.3d 791 (8th Cir. 2004), affirmed a downward departure where the district court found that the defendant's crime was the result of obsessive behavior. That situation is not parallel to the case before us.

The sentence is also reasonable in light of the factors set out under 18 U.S.C. § 3553(a). Judge Coar both acknowledged and considered those factors, and he coherently articulated which affected his sentencing decision. Lange has not rebutted the presumption of reasonableness for his sentence, which was within the Guidelines range. *See United States v. Mykytiuk*, 415 F.3d 606 (7th Cir. 2005).

## III.  Conclusion

The district court's sentence is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*