In the

# United States Court of Appeals
## For the Seventh Circuit

No. 04-3978

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JEFFERY LAUFLE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 04 CR 92—**John C. Shabaz**, *Judge.*

ARGUED SEPTEMBER 14, 2005—DECIDED JANUARY 11, 2006

Before EASTERBROOK, ROVNER, and SYKES, *Circuit Judges.*

ROVNER, *Circuit Judge.* After defendant Jeffery Laufle pleaded guilty to a marijuana-trafficking conspiracy, the district court ordered him to serve a prison term of 76 months, a sentence within the range specified by the United States Sentencing Guidelines. Anticipating the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005), the court indicated that it would impose the identical sentence if the Guidelines were treated as advisory, which in the wake of *Booker* they now are. Laufle appeals, contending that the district court, in calculating the Guidelines range, improperly denied him a favorable adjustment to his offense level for being a minor

participant in the conspiracy and that the court also erred in denying the prosecutor's request for a downward departure for providing substantial assistance to the government. We see no error in the calculation of the Guidelines sentencing range, nor do we find the sentence imposed unreasonable. We therefore affirm Laufle's sentence.

## I.

Beginning in or around 1998, Ralph Villegas caused multi-kilogram quantities of marijuana to be shipped from Texas to co-conspirator Gale Kleman in the LaCrosse, Wisconsin area. Kleman distributed marijuana in the Minneapolis-St. Paul region, and Villegas had a connection in Texas who could obtain the marijuana for him. (Villegas actually had begun distributing marijuana to Kleman in 1995, but during the first few years of their business relationship, Kleman had taken possession of the marijuana in Texas.) Between 1998 and September 2003, when the conspiracy among Villegas, Kleman, and their associates was exposed, at least 1,433 kilograms of marijuana was dropped off in the LaCrosse area for forwarding to Kleman in Minneapolis.

Laufle owned an industrial coating and painting company that maintained its office and warehouse in Holmen, Wisconsin, near LaCrosse. After he began receiving marijuana in LaCrosse, Kleman recruited Laufle to permit the use of the warehouse as an occasional drop-off point for marijuana shipments. Laufle would later admit that he received and stored two to three shipments annually at the warehouse for a period of four or five years. Laufle arranged for an acquaintance, Steven Lee, to receive and help unload shipments at the warehouse when Laufle was not available to do so. Typically the marijuana was stored at Laufle's warehouse for only a short period of time before someone retrieved and transported it to its

final destination in Minneapolis. Laufle indicated that he drove roughly half of these shipments to Minneapolis himself. Depending on the size of the shipment, Laufle was paid between $5,000 and $7,000 for receiving and storing the marijuana; and he was given another $1,000 for each load that he drove to Minnesota.

In June 2004, the government filed an information charging Laufle with conspiring to possess with the intent to distribute in excess of 50 kilograms of marijuana, in violation of 21 U.S.C. § 841(a)(1). Pursuant to a written plea agreement with the government, Laufle waived indictment and pleaded guilty to the charge. Also pursuant to the plea agreement, the government agreed to move for a downward departure for substantial assistance in the event Laufle cooperated to a sufficient extent.

Laufle appeared for sentencing on November 3, 2004. Employing the November 2003 version of the Guidelines, the probation officer proposed a total offense level of 27 that reflected a base offense level of 32 for a narcotics offense involving 1,000 to 3,000 kilograms of marijuana, *see* U.S.S.G. § 2D1.1(c)(4), a two-level reduction pursuant to the safety-value provisions of §§ 2D1.1(b)(6) and 5C1.2, and a three-level reduction for timely acceptance of responsibility, *see* § 3E1.1. Coupled with a criminal history category of I, the adjusted offense level called for a sentence in the range of 70 to 87 months. The district court adopted these calculations.

The court rejected Laufle's contention that he was entitled to an additional two-level reduction in the offense level for having been a minor participant in the conspiracy. *See* U.S.S.G. § 3B1.2(b). The court pointed out that Laufle had allowed marijuana to be stored in his warehouse, that he had helped unload the marijuana for storage, that he had transported some of the marijuana to Minnesota, and that he had recruited Lee to provide

assistance in receiving the marijuana. R. 24 at 10. The court agreed with Laufle that his role in the offense "was certainly less than that of Kleman and Villegas[,] who appear to be regional middlemen with the large scale suppliers and the local dealers." *Id.* at 11. But the court disagreed with Laufle that his lesser role as compared to the two people who organized the conspiracy was insufficient to qualify him as a minor participant.

> You don't look at the two key players and say, Oh, gee, he was less culpable than were the bosses and accordingly he is then a minor participant. It isn't the way it works. It looks to all of those who were involved in the offense . . . and [Laufle] was not substantially less culpable than the average participant.

*Id.* at 11-12. On comparing Laufle with the entire set of individuals identified as co-conspirators in this case, the court found that his involvement with the conspiracy was "certainly much more substantial" than the complicity of others and that Laufle "was not substantially less culpable than the average participant." *Id.* at 12.

The court also denied the government's section 5K1.1 motion for a downward departure based on the assistance Laufle had provided to the government. The government represented that Laufle's cooperation had made it less difficult to establish the full extent of the conspiracy, had corroborated the information provided by informants, and had helped tie together the government's case. However, the court was not persuaded that Laufle's assistance was so substantial as to warrant a downward departure. R. 24 at 12-13. The court subsequently added that although Laufle had been "cooperative" and "helpful," the convictions of neither Villegas nor Kleman (who were charged separately) could be attributed to Laufle's assistance. *Id.* at 14-15.

Faced with a Guidelines range of 70 to 87 months, the court elected to impose a sentence of 76 months. The

court noted that Laufle's criminal conduct "wasn't a one-time deal. It wasn't aberrant. It wasn't anywhere close to that." R. 24 at 19. The court also pointed out that in contrast to many defendants, Laufle was not someone who had led a deprived life or who had lacked opportunities to succeed in legitimate ways, but rather had succumbed to greed when presented with a chance to make a substantial amount of money in narcotics trafficking. *Id.* at 19-20. Finally, the court observed that Laufle, at age 50, was a mature individual who "knows better." *Id.* at 19.

The court also considered what sentence it might impose if the Sentencing Guidelines were held unconstitutional by the Supreme Court. (By the time Laufle was sentenced, this court had held in *United States v. Booker*, 375 F.3d 508 (7th Cir. 2004), that *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004), barred a sentencing judge from making findings of fact that increased a defendant's offense level under the Guidelines (and the corresponding sentencing range). The district court noted that Laufle's offense level was based solely on conduct to which he had stipulated in his plea agreement. R. 24 at 4-5, 13. Nonetheless, the court correctly anticipated the possibility that the Supreme Court, whose own decision in *Booker* was still two months off, might declare mandatory application of the Guidelines unconstitutional even in such a case.) Taking into consideration "all relevant facts" and treating the Guidelines not as binding but rather as "a reliable indicator" of what an appropriate sentence would be, the court concluded that a sentence of 76 months was called for. *Id.* at 21-22.

> [The Court has] considered the substantial amount of marijuana which was a part of this offense. It has considered the fact that there is responsibility demonstrated by the defendant for his failure to follow the law in this matter. There is also the fact that the transactions occurred over a lengthy period of time and numer-

ous instances were involved. And having considered all relevant facts and circumstances . . . the Court then imposes the same sentence as previously announced.

*Id.*

## II.

We begin our review with a few words about the Supreme Court's decision in *Booker*, which establishes the scope of our review and sets the stage for the particular arguments that Laufle is making in this appeal. *Booker*, of course, deemed the Sentencing Guidelines inconsistent with the Sixth Amendment insofar as they mandated sentences within specified ranges that frequently (although not always) turned on factual findings rendered by the sentencing judge rather than a jury. 125 S. Ct. at 749-51, 755-56. The Supreme Court remedied the constitutional problem by severing and excising the statutory provisions that (with narrow exceptions) compelled district judges to sentence within the specified Guidelines range and that provided for appellate review to ensure, inter alia, that the lower courts did so. *Id.* at 764-65. As a result, district courts, though they remain obliged to ascertain and consult the sentencing range called for by the Guidelines, are no longer obliged to impose a sentence within that range. *E.g.*, *United States v. Julian*, 427 F.3d 471, 490 (7th Cir. 2005). And this court, although it still considers whether the district court properly calculated the Guidelines sentencing range, ultimately reviews the sentence imposed to determine whether it is reasonable. *See Booker*, 125 S. Ct. at 765-66; *United States v. Paladino*, 401 F.3d 471, 484 (7th Cir.), *cert. denied*, 126 S. Ct. 106 (2005).

When it sentenced Laufle, the district court did so in the first instance treating the sentencing range specified by Guidelines as mandatory. In calculating the Guidelines

range, the court had made no factual findings that boosted Laufle's offense level and the resulting sentencing range. Accordingly, under this court's 2004 decision in *Booker*, application of the Guidelines did not impinge on Laufle's Sixth Amendment right to a jury trial. 375 F.3d at 515. However, the Supreme Court's *Booker* decision, which chose to remedy the Sixth Amendment problem by excising the statutory provision that bound the courts to follow the Guidelines, renders the Guidelines advisory in all cases. In retrospect, then, it was error for the district court to consider itself obligated to sentence within the Guidelines range. *See United States v. White*, 406 F.3d 827, 835 (7th Cir. 2005) ("the mere mandatory application of the Guidelines—the district court's belief that it was required to impose a Guidelines sentence—constitutes error").

Nonetheless, the alternative sentence that the district court announced makes clear that Laufle was not prejudiced by the *Booker* error. Anticipating that the Supreme Court might find the Guidelines unconstitutional, the court considered what sentence it would impose if it considered the Guidelines "merely as a reliable indicator" of an appropriate sentence—in other words, treating the Guidelines as advisory rather than binding. R. 24 at 22. Taking into account "all relevant facts and circumstances," the court concluded that it would still impose a sentence of 76 months. *Id.* This is not a case, then, that raises any doubt as to whether the district court might have imposed a sentence outside the Guidelines range if the court had known that it had the discretion to do so. *See Paladino*, 401 F.3d at 482-83; *United States v. Lee*, 399 F.3d 864, 866 (7th Cir. 2005). The court's alternative sentence makes clear that the court would not have sentenced Laufle differently. *See United States v. George*, 403 F.3d 470, 472-73 (7th Cir.), *cert. denied*, 126 S. Ct. 636 (2005).

Although sentencing judges enjoy much broader discretion after *Booker*, they remain obliged to consult the

Guidelines in determining an appropriate sentence, and we must therefore consider whether the district court properly calculated the (advisory) Guidelines sentencing range. *E.g.*, *Julian*, 427 F.3d at 488. Laufle contends that the district court made two errors that resulted in a higher Guidelines offense level and sentencing range than should have applied. Specifically, Laufle argues that the court errone-ously denied him a downward adjustment pursuant to section 3B1.2(b) for being a minor participant in the offense and denied the government's motion for a downward departure pursuant to section 5K1.1 for providing substan-tial assistance to the government.

As for whether Laufle should have been given credit for being a minor participant in the conspiracy, we discern no clear error in the district court's determination that he was not. *See United States v. Parra*, 402 F.3d 752, 762-63 (7th Cir. 2005) (decisions as to adjustment for lesser role in offense still reviewed for clear error after *Booker*), *pet. for cert. filed* (U.S. Dec. 16, 2005) (No. 05-8230). Section 3B1.2 provides a range of adjustments for a defendant whose limited role in the offense renders him "substantially less culpable than the average participant." U.S.S.G. § 3B1.2, comment. (n.3(A)). The two-level adjustment for being a "minor" participant is intended for the defendant "who is less culpable than most other participants, but whose role could not be described as minimal." *Id.*, comment. (n.5). Laufle undoubtedly played a lesser role in the charged conspiracy than did Villegas and Kleman, as the district court expressly recognized. R. 24 at 11. But Villegas and Kleman were not the only other members of the conspiracy. A number of other [identified] individuals (the probation officer identified at least seven) were involved in a variety of ways, including sourcing the marijuana, transporting the marijuana and arranging that transportation, and unload-ing it at Laufle's warehouse. R. 22 at 4-8. One could reasonably think of those persons as typifying the "average"

participant in this conspiracy, and the district judge reasonably concluded that Laufle was not less culpable than those individuals, let alone substantially less culpable. On the contrary, Laufle participated in the conspiracy for a period of between four and five years, he accepted and stored two to three shipments of marijuana annually at his warehouse over that period of time, he drove half of those shipments to Minnesota himself, and he acknowledged being paid tens of thousands of dollars for his assistance. Under these circumstances, the district court committed no clear error in refusing to characterize Laufle's role in the conspiracy as "minor." *Cf. United States v. Gonzalez*, 319 F.3d 291, 300 (7th Cir.) (no clear error in denying mitigating role adjustment to defendant who "executed the important task of securing the warehouse for delivery" of cocaine), *cert. denied*, 539 U.S. 921, 123 S. Ct. 2289 (2003).

Laufle also contends that the district judge improperly conditioned a downward departure for substantial assistance on proof that his cooperation with the government was responsible for the conviction of another individual. The way in which Laufle has framed this argument reflects an attempt to fit it within the narrow review framework for departures that we employed prior to the Supreme Court's decision in *Booker*. Within that framework, a district court's refusal to depart downward was not reviewable so long as the district court understood its authority to depart and denied the departure request in the exercise of its discretion. *See*, *e.g.*, *United States v. Winston*, 34 F.3d 574, 581 (7th Cir. 1994). Only when the court mistakenly believed that it lacked the authority to depart or committed some legal error in denying the request might we intervene. *See id.* Thus, Laufle posits that the district court, in looking for proof that he had helped the government obtain the conviction of a co-defendant, engrafted a requirement for the departure that the Guidelines themselves do not impose. The premise of

Laufle's argument strikes us as inaccurate: The district court noted the absence of proof that Laufle had helped secure someone else's conviction as an afterthought, R. 24 at 15, after it had already denied the departure motion; the central reason that the court cited for its decision was its perception that Laufle's assistance could not be characterized as substantial, *id.* at 13. In any event, in view of the substantial change that *Booker* has worked on federal sentencing, this is an unnecessary diversion.

In the wake of *Booker*, we have concluded that discussion of a district court's departure decisions has been rendered "obsolete". *United States v. Arnaout*, ___ F.3d ___, 2005 WL 3242213, at *7 (7th Cir. Dec. 2, 2005) (citing *United States v. Johnson*, 427 F.3d 423, 426 (7th Cir. 2005)); *see also United States v. Long*, 425 F.3d 482, 487-88 (7th Cir. 2005); *United States v. Castro-Juarez*, 425 F.3d 430, 436 (7th Cir. 2005). Before *Booker*, departures were the principal means of sentencing outside of the range specified by the Guidelines. Now that *Booker* has rendered the Guidelines advisory and district courts have much broader authority to sentence outside the recommended range, departures are beside the point. The district court's obligation in every instance is to consult the Guidelines and, taking into account the sentencing factors set forth in section 3553(a), to impose a reasonable sentence. Our obligation, in turn, is to determine whether the sentence imposed, be it within or without the Guidelines range, is reasonable. *E.g.*, *Johnson*, 427 F.3d at 426-27.

Thus, Laufle's contention that the district court imposed an erroneous standard in denying the government's motion for a downward departure is a non-starter. The question instead is whether his sentence is reasonable. Departures aside, the nature and degree of his assistance to the government is of course a relevant sentencing factor, and we shall address Laufle's cooperation below.

There being no error in the calculation of Laufle's offense level and sentencing range, what remains for us to determine is whether the sentence that the district court imposed is reasonable. In selecting a sentence, a district court is obliged to consider the sentencing factors identified in 18 U.S.C. § 3553(a). *United States v. Dean*, 414 F.3d 725, 728 (7th Cir. 2005). That is not to say that the court must discuss and make findings as to each of these factors. *George*, 403 F.3d at 472-73 *(*"[j]udges need not rehearse on the record all of the considerations that 18 U.S.C. § 3553(a) lists"). It is enough that the record confirms meaningful consideration of the types of factors that section 3553(a) identifies. *United States v. Williams*, 425 F.3d 478, 480 (7th Cir. 2005), *pet. for cert. filed* (U.S. Dec. 21, 2005) (No. 05-8241). A concise statement of the factors that caused the judge to arrive at a particular sentence, consistent with section 3553(a), will normally suffice. *Dean*, 414 F.3d at 729. This is particularly so when the court imposes a sentence within the Guidelines range, because such a sentence is presumptively reasonable. *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005).

The district court's sentencing decision comports with these criteria. This is not, in the first instance, a case in which the court gave little or no rationale for its decision. *Cf. United States v. Cunningham*, 429 F.3d 673, 677 (7th Cir. 2005). The court articulated a number of reasons for its decision to impose a sentence within the Guidelines range, and these statements reflect consideration of the types of factors identified in section 3553(a)—including the nature and circumstances of the offense, the history and character of the defendant, and the need for a sentence that accounts for the gravity of the offense, promotes respect for the law, and provides for just punishment. The court noted, among other things, that Laufle's criminal activity took place over a lengthy period of time and involved a substantial quantity of marijuana; that Laufle, despite being a successful, 50 year-old business and family man who knew better, had

willingly involved himself in a narcotics conspiracy, apparently out of greed; that Laufle's conduct, if not appropriately punished, would send a signal to others that they too could resort to crime as a way to make easy money and get away with it; and (on the other hand) that Laufle had accepted responsibility for his crime. R. 24 at 18-20, 21-22. Thus, although the court did not cite section 3553(a), its reasoning was entirely consistent with the factors set forth in that statutory provision. *See United States v. Rodriguez-Alvarez*, 425 F.3d 1041, 1047 (7th Cir. 2005) (citing *United States v. Alburay*, 415 F.3d 782, 787 (7th Cir. 2005)) (district court's sentencing rationale was adequate although district court did not cite any specific section 3553(a) factor in support of its sentence).

The record of the sentencing proceeding also confirms that the parties had a full opportunity to highlight circumstances that might call for a different sentence than the one that the court ultimately chose—including a sentence outside of the Guidelines range—and that the district court took these factors into consideration. *See Cunningham*, 429 F.3d at 676, 679. Laufle contends that the court essentially overlooked two factors, namely Laufle's "positive personal history and character" (Laufle Br. at 16)—including his lack of a prior criminal history, his successful (legitimate) business, and his devotion to his family, church, and community—and Laufle's cooperation with the government. However, the court in fact addressed both factors at sentencing. The court reasoned that Laufle's background, character, and accomplishments did not warrant a lesser sentence, as they simply demonstrated that he had socio-economic advantages that other defendants did not. R. 24 at 19-20. The court also acknowledged that Laufle had been helpful to the government but, as we have noted, deemed his assistance insufficiently extraordinary to merit a sentence outside of the Guidelines range. *Id.* at 12-13, 14-15.

Granting due deference to the district judge's discretion in sentencing, we cannot say that Laufle has rebutted the presumption of reasonableness that attaches to a sentence within the advisory Guidelines range. The court imposed the sentence it did for reasons that "are logical and consistent with the factors set forth in section 3553(a)." *Williams*, 425 F.3d at 481. Although Laufle may have otherwise led a law-abiding, even commendable life, he nonetheless lent important support to a narcotics conspiracy over a substantial period of time, apparently for the easy money. And although he did cooperate fully with the government, we cannot say that his assistance was so significant as to compel the district court to give him more credit for his cooperation than it did. (We point out that Laufle did receive the maximum possible reduction in his offense level for acceptance of responsibility.) It is possible that a different sentencing judge might have given more weight to the factors Laufle has emphasized. But disagreement with this judge's assessment of the relevant sentencing factors does not by itself warrant reversal, for "[t]he question is not how we ourselves would have resolved the factors identified as relevant by section 3553(a) . . . nor what sentence we ourselves ultimately might have decided to impose on the defendant." *Williams*, 425 F.3d at 481; *see also United States v. Newsom*, 428 F.3d 685, 686-87 (7th Cir. 2005). Our task is confined to determining whether the district court considered the appropriate range of factors and arrived at a reasonable sentence. We can say with assurance that this is not one of the rare cases in which one or more mitigating factors demand a sentence below the Guidelines range. *See Mykytiuk*, 415 F.3d at 608.

## III.

The error in treating the Sentencing Guidelines as mandatory was harmless, given the district court's determi-

nation that it would impose the same sentence even if the Guidelines were deemed advisory rather than mandatory. As the sentence imposed is within the Guidelines range, it is presumptively reasonable, and Laufle has not rebutted that presumption. The district court articulated a rationale for the sentence that is consistent with 18 U.S.C. § 3553(a), and the court neither overlooked nor improperly discounted any mitigating factor that warranted a sentence outside of the Guidelines range.

AFFIRMED

A true Copy:

       Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*