In the

# United States Court of Appeals

## For the Seventh Circuit

No. 05-3717

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

OLYMPIA BLUE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division
No. 04 CR 180-5—**James F. Holderman**, *Chief Judge.*

ARGUED JUNE 2, 2006—DECIDED JULY 14, 2006

Before POSNER, EASTERBROOK, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Following her plea of guilty to charges of wire and bank fraud, the district court ordered Olympia Blue imprisoned for a term of 46 months, a sentence at the low end of the range called for by the United States Sentencing Guidelines. Blue appeals, contending that her sentence is unreasonable in view of the government's request that she be sentenced below the Guidelines range. We affirm.

## I.

Blue was one of several individuals who participated in a multifaceted scheme to obtain cash and credit through

fraud. Blue and her fellow schemers were able to finance the purchase of a number of automobiles, for example, by using social security numbers and other identifying information misappropriated from unwitting victims with positive credit histories. Blue obtained some of that information from a credit database maintained by Equifax corporation. Blue was able to access that database using a toll-free telephone number, access code, and personal identification number (PIN) that co-defendant Tanya Asberry had received from her employer. In addition, Blue defrauded banks by depositing a series of worthless checks (drawn on a closed account) into her bank account, temporarily inflating the account balance and enabling her to make debit charges and withdrawals before the fraud was discovered. Blue also created counterfeit cashier's checks that two of her co-defendants used to obtain goods and services.

Blue eventually pleaded guilty to one count of mail fraud involving the fraudulently-financed purchase of a Dodge Ram pickup truck and two counts of bank fraud involving the worthless and counterfeit checks. Pursuant to a letter agreement with the government, Blue agreed not only to plead guilty to these charges but also to provide complete and truthful cooperation with the government in its investigation of the offense. Provided that she complied with this obligation, the government agreed to recommend a prison term equal to 80 percent of the low end of the sentencing range called for by the Guidelines.

Asberry was the only one of Blue's co-defendants who proceeded to trial, and Blue testified against her. Blue explained how she was able to access the Equifax credit database using the telephone number, PIN, and other information Asberry's employer previously had provided to Asberry. Although Blue denied that she had obtained this information from Asberry, Blue did testify that she had a telephone conversation with Asberry in July 2002 during

which she not only disclosed to Asberry that she had the information but read the various numbers to Asberry and asked her to confirm their accuracy, which Asberry did. Blue's testimony suggested that Asberry likely would have noticed the succession of new vehicles Blue purchased in the ensuing months, as she and Asberry saw each other on an almost daily basis. And Asberry would have had cause to wonder where Blue was getting the money to purchase these vehicles, given that Blue had no job or other source of legitimate income. Blue was arrested on state charges in January 2003, and when Equifax was notified of her fraud, the access numbers she was using were deactivated. Blue's criminal activity did not cease, however: Blue continued to purchase vehicles through fraud using her own name (or a variant thereof) along with social security numbers that she chose at random. According to Blue, Asberry helped her in this endeavor. Asberry recommended certain dealerships that she knew made it easy to buy cars, for example. More concretely, on three occasions Asberry accompanied Blue to various dealerships where Blue purchased vehicles through fraud and in one instance Asberry used her own credit card to help Blue make a down payment on one of the fraudulently purchased vehicles.

Asberry herself had given a statement in the course of the government's investigation, and that statement was admitted at trial. In that statement, Asberry acknowledged that she had explained to Blue in the spring of 2001, when Blue and Asberry were living together, how the toll-free number was used to access the Equifax database. Asberry confessed that when Blue and her co-schemers began to drive "nice cars" in the spring and summer of 2002, she realized that "they were probably up to no good with the 800 number and using it to purchase the cars." R. 213-2 at 225, 333. She knew "for sure" by December 2002 that Blue was using the toll-free number to make fraudulent automobile purchases. *Id.* at 225. Finally, Asberry admitted that

she had accompanied Blue to dealerships on three occasions to make fraudulent vehicle purchases and that she helped Blue obtain one of those cars by charging a portion of the down payment to her own credit card. *Id.*

At the conclusion of Asberry's trial, the jury convicted her of one count of wire fraud. It was unable to reach a verdict as to two additional counts of wire fraud, and the court declared a mistrial as to those two counts. Asberry is still awaiting sentencing.

Satisfied with Blue's cooperation, the government honored its letter agreement with her and filed a motion (styled as one for a downward departure from the Guidelines range) asking the court to impose a sentence equal to 80 percent of the low end of the Guidelines range. The government pointed out that Blue's testimony had established that Asberry was aware that Blue possessed the toll-free number for Equifax along with the other information necessary to access its database and that Asberry had confirmed that information for Blue despite knowing that it was illegal for Blue to access the database. Blue's testimony also revealed that Asberry was involved with Blue's continuing efforts to fraudulently obtain cars after the Equifax access numbers were deactivated. Blue's testimony was to some extent corroborated by other evidence, and the government saw this is an indicator that she had testified truthfully. R. 242.

After taking into account such factors as the amount of the loss resulting from Blue's criminal activity ($419,186.87), *see* U.S.S.G. § 2B1.1(b)(1) (2002),[1] and her acceptance of responsibility, *see* U.S.S.G. § 3E1.1, the district court arrived at an adjusted Guidelines offense level of 21. Believing that Blue had played a leadership role in

---

[1] The court calculated Blue's sentencing range using the 2002 version of the Sentencing Guidelines. All of our Guidelines citations are therefore to that version.

the offense, the probation officer had proposed an additional increase of four points in the offense level. *See* U.S.S.G. § 3B1.1(a). Although the district court was inclined to agree with the probation officer, both the government and Blue objected to that enhancement, and in light of their opposition the court declined to adopt the probation officer's recommendation. R. 311 at 4-6. Coupled with Blue's criminal history category of III, the offense level of 21 produced a sentencing range of 46 to 57 months' imprisonment.

The court opted to impose the minimum Guidelines sentence of 46 months. The court rejected the government's request for an even lower sentence equal to 80 percent of that minimum (roughly 36 months) to reward Blue for her cooperation with the government. R. 311 at 18. The court reasoned:

> I believe Ms. Blue was a very active participant in this crime, these series of crimes. I believe under the circumstances that the government's motion for downward departure should not be granted. I believe a sentence at the low end of the Guideline range is an appropriate sentence. To go below that I think would denigrate the seriousness of Ms. Blue's offenses, and so I decline to depart from the Guideline range.

*Id*. Pursuant to Guidelines section 5G1.3(b), the court did grant Blue credit against her federal sentence 503 days of time she had spent in custody on a related state offense. *Id*.

Approximately two weeks after Blue's sentencing, the court entered an order making certain findings pursuant to the Guidelines in anticipation of Asberry's eventual sentencing. Included in those findings were certain observations about Blue. The court described Blue as "clearly the most culpable of all the alleged co-schemers." R. 266 at 3. The court also found that Blue was "less than totally

credible" in her testimony against Asberry. *Id.* In particular, the court discredited Blue's testimony about the telephone conversation she had with Asberry in July of 2002 in which Blue purportedly disclosed to Asberry that she had the Equifax 800 number and access information and asked Asberry to confirm the accuracy of that information. *Id.*; *see* R. 213-2 at 253-54.[2]

## II.

Blue contends that her sentence is unreasonably high in view of her cooperation with the government and the government's own request that she be sentenced below the Guidelines range based on that cooperation. Prior to the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S. Ct.738 (2005), a defendant's substantial assistance to the government was recognized by way of a downward departure from the Guidelines range. *See* U.S.S.G. § 5K1.1. After *Booker*, which rendered the Guidelines advisory, departures have become obsolete. *See United States v. Laufle*, 433 F.3d 981, 986-87 (7th Cir. 2006) (collecting cases). If the court has a sound basis for concluding that a sentence above or below the Guidelines range is appropriate, it has the discretion to select such a sentence without the need to consider whether a departure would have been warranted in the pre-*Booker* era when the Guidelines were binding. In every case, it is a district

---

[2] Based on Asberry's own pre-trial statement, the court found that Asberry was not actually aware that Blue and the other co-defendants were misusing the Equifax access numbers until December 2002. R. 266 at 3. For that reason, the court concluded that the frauds Blue and others had committed using the Equifax information were not foreseeable to Asberry and that she could not be held to account for them for sentencing purposes. *Id.*

court's obligation to arrive at a reasonable sentence after consulting the Guidelines and taking into account the broad sentencing factors that Congress set forth in 18 U.S.C. § 3553(a). *See Booker*, 543 U.S. at 259-60, 261, 125 S. Ct. at 764-65, 766; *Laufle*, 433 F.3d at 987. Provided that the district court properly calculated the Guidelines range, our task on appeal is simply to determine whether the sentence imposed is a reasonable one. *Booker*, 543 U.S. at 261, 125 S. Ct. at 765; *Laufle*, 433 F.3d at 984-85. A sentence that falls within the properly-calculated Guidelines range, as Blue's sentence does, is presumed reasonable. *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005). Blue bears the burden of rebutting that presumption by showing that the sentence is inconsistent with the section 3553(a) sentencing factors. *Id.*

Blue's assertion that her sentence is unreasonable is premised on her view that the district court's rationale for rejecting the government's request for a lower sentence was both incomplete and faulty. Blue points out that the U.S. Sentencing Commission provided for substantial assistance departures at the specific direction of Congress. *See* 28 U.S.C. § 994(n). *Booker* may have rendered departures obsolete, but the rationale for rewarding defendants who have been helpful to the government with below-Guidelines sentences remains: it arms the government with "an inducement that can be used to solve old crimes and deter new ones." *United States v. Zingsheim*, 384 F.3d 867, 870 (7th Cir. 2004). Blue concedes that a court is not obliged to accede to the government's wishes—after *Booker* as before, a prosecutorial request to recognize the defendant's assistance with a below-Guidelines sentence is one addressed to the district court's discretion. *See, e.g., United States v. Hayes*, 939 F.2d 509, 512 (7th Cir. 1991) (pre-*Booker*) ("once the government has moved for a downward departure, the decision whether to depart is within the sound discretion of the district court"); *United States v.*

*Walker*, 447 F.3d 999, 1007 (7th Cir. 2006) (post-*Booker*) ("[a] sentencing court applying *Booker* now consults the Guidelines as *guidance* for what is a wholly discretionary decision . . .") (emphasis in original). Indeed, prior to *Booker*, a district court's exercise of discretion as to a substantial-assistance departure was unreviewable. *E.g.*, *Zingsheim*, 384 F.3d at 870. But Blue maintains that *Booker* nonetheless obliges the court to consider all relevant sentencing factors in arriving at a reasonable sentence, and the assistance a defendant has provided to the government certainly is one of those factors. *Cf. United States v. Wills*, 35 F.3d 1192, 1196 (7th Cir. 1994) (pre-*Booker*) (district court "ought to hear the government and give thoughtful consideration to what the representative of the United States has to say" in assessing government's request for substantial-assistance departure), *overruled on other grounds by Melendez v. United States*, 518 U.S. 120, 116 S. Ct. 2057 (1996).

Specifically, Blue believes that appropriate considera-tion of a defendant's cooperation requires the district court to make findings as to the extent and importance of the help that the defendant has given to the government and, if the court is not inclined to impose a sentence below the Guide-lines range in accordance with the government's request, to articulate rational reasons for remaining within the Guidelines range. Blue believes that the district court complied with neither obligation: the court made no finding as to whether or not she did provide substantial assistance to the government, and the court discounted her cooperation as a factor that might warrant a below-Guidelines sentence for reasons that, to Blue's mind, are irrational. As noted, the court remarked that Blue was an active participant in the offense and that a sentence below the bottom of the Guidelines range would denigrate the seriousness of that offense. R. 311 at 18. Blue retorts that being an active participant in crime is what enables a defendant to provide

significant help to the government. She adds that because she had genuinely accepted responsibility for her conduct (as evidenced by the credit she received in that regard) and because the government proposed a relatively modest deviation from the Guidelines range (80 percent of the minimum), sentencing her to a lower term would not have not have been inconsistent with the gravity of the offense.

The government agrees with Blue that the court should have granted its request for a reduced sentence but nonetheless defends the district court's sentence as reasonable. "Defendant's testimony substantially assisted the government in its prosecution of Asberry, and the government believes that the district court should have given some weight to that assistance. Nevertheless, when considered along with other sentencing factors, the assistance was not so significant that it compelled the district court to impose a sentence below the advisory sentencing guidelines range." Gov. Br. at 13.

Our task, we should again emphasize, is not to review in isolation the district court's rejection of the government's request for a below-Guidelines sentence, but rather to evaluate the overall reasonableness of the sentence imposed. Looking at the court's refusal to impose a sentence outside the advisory Guidelines range is an aspect of that assessment, *United States v. Vaughn*, 433 F.3d 917, 924 (7th Cir. 2006), but it is just one aspect. The district court must consider and balance the wide range of factors reflected in section 3553(a). *United States v. Dean*, 414 F.3d 725, 728 (7th Cir. 2005). We owe deference to the court's resolution of those factors, particularly when the court has imposed a sentence within the range recommended by the Guidelines. *United States v. Williams*, 425 F.3d 478, 481 (7th Cir. 2005), *cert. denied*, 126 S. Ct. 1182 (2006). We may intervene if the district court has altogether ignored a relevant consideration, *e.g.*, *United States v. Cunningham*, 429 F.3d 673, 677-78 (7th Cir. 2006), or has unreasonably

discounted a factor so weighty as to compel a sentence outside of the Guidelines range, *see Dean*, 414 F.3d at 729 ("The sentencing judge cannot, after considering the factors listed in [section 3553(a)], import his own philosophy of sentencing if it is inconsistent with them."); *Williams*, 425 F.3d at 481 ("We have left room for the possibility that there will be some cases in which a sentence within the Guidelines range, measured against the factors identified in section 3553(a), stands out as unreasonable.") (citing *Mykytiuk*, 415 F.3d at 608). But it is not our province to second guess the district court's sentencing rationale. *Id.* "Rather, what we must decide is whether the district judge imposed the sentence he or she did for reasons that are logical and consistent with the factors set forth in section 3553(a)." *Id.*

Having reviewed the record and the district court's reasons for sentencing Blue as it did, we are satisfied that her sentence is a reasonable one. The district court, as the government recognizes, has an obligation to weigh the defendant's cooperation (and the government's request for a reduced sentence) against the other statutory sentencing factors. *See generally Vaughn*, 433 F.3d at 923-24. Among those factors are the nature and circumstances of the defendant's crime, § 3553(a)(1), and "the need for the sentence imposed . . . to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment for the offense," § 3553(a)(2)(A). That is what the court did here.

We do not fault the court for omitting to make findings as to the degree and importance of Blue's assistance to the government. *See Dean*, 414 F.3d at 729-30 (district court's obligation to consider relevant sentencing factors is not an obligation to make findings as to each factor). As we read the sentencing transcript, the district court had no quarrel with the representations that the government made in its written request for a below-Guidelines sentence concerning

Blue's cooperation; the court accepted that Blue had been of material help to the government in prosecuting Asberry. *Cf. Laufle*, 433 F.3d at 983-84 (court not convinced defendant had provided substantial assistance).[3] Indeed, it appears that the court chose a sentence at the low end of the Guidelines range in part because of that aid. R. 311 at 18. The court rejected a sentence below the Guidelines minimum not because it discredited the government's assessment of Blue's cooperation but rather because it believed that Blue's criminal conduct was too serious to warrant a lower sentence. *Id.*

And Blue's offense conduct was serious: she helped to commit not one criminal act but a series of them. A number of those acts involved identity theft, which expanded the roster of victims beyond the car dealers, finance companies, and banks that she and her co-defendants were defrauding. The testimony at sentencing by one of the persons whose identifying information had been misappropriated provided concrete illustration of the ways in which others were harmed by Blue and her cohorts. R. 311 at 13-14. Blue, as the district court observed, was not a minor but rather an active participant in this series of offenses. *Id.* at 18. Indeed, the court later described her as "clearly the most culpable" of all those involved. R. 266 at 3. Blue rightly points out that active participants often have the most to offer the government in their ability to shed light upon the crime and expose the involvement of others. But as we have recognized before, knowledge that derives from participation in a crime is a double-edged sword: it enables the

---

[3] Although the court later found that Blue had been "less than totally credible" when she testified at Asberry's trial, R. 266 at 3, a finding that conflicts to some extent with the government's representation that Blue had testified truthfully, the court in sentencing Blue did not reject the notion that she had been of significant aid to the government.

insider to be of real help to the government, but it often reflects a higher degree of responsibility for the crime. *United States v. Atkinson*, 15 F.3d 715, 719 (7th Cir. 1994). A sentencing judge cannot be faulted for taking into account the latter as well as the former.

We cannot say that the balance the district court struck between Blue's cooperation with the government and her level of culpability was unreasonable. The court did sentence Blue to the minimum term called for by the Guidelines, and as a result of the credit she was given for the time served on a related state sentence, the time she will serve on the federal sentence was shortened by more than a year. At the same time, in the face of joint opposition from the parties, the court refrained from enhancing Blue's offense level for having played a leadership role in the offense, notwithstanding the belief of both the court and the probation officer that the enhancement was appropriate. It is entirely possible that we might have sustained the enhancement had the court chosen to impose it; the fact that the government and Blue shared the view that the enhancement was unwarranted would not have bound us on appeal any more than it bound the district court. *See*, *e.g.*, *United States v. Wilson*, 169 F.3d 418, 427 & n.8 (7th Cir. 1999). Blue's sentence, in sum, was shorter than it otherwise might have been. Given the extent and gravity of her conduct, the court reasonably concluded that an even lesser sentence was not appropriate. Put another way, Blue's cooperation, considered along with all of the other relevant factors, did not compel a sentence below the advisory Guidelines range.

## III.

Blue has not rebutted the presumption of reasonableness that attaches to her Guidelines sentence. We therefore AFFIRM the sentence.

No. 05-3717                                                          13

A true Copy:

    Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*