UNPUBLISHED ORDER

Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 11, 2006
Decided July 27, 2006

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

No. 05-4464

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>  *Plaintiff-Appellee*,<br><br>  *v.*<br><br>BARRY O. RAMSEY,<br>  *Defendant-Appellant*. | Appeal from the United States District Court for the Southern District of Illinois<br><br>No. 3:04-CR-30121-001-MJR<br><br>Michael J. Reagan,<br>*Judge*. |

**O R D E R**

  Barry Ramsey pleaded guilty to possession of a firearm by a felon and was sentenced after the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005). As relevant to this appeal, he sought a sentence below his guidelines range based on his allegedly diminished mental capacity, but the district judge rejected his argument and sentenced him within the range to 21 months' imprisonment and three years' supervised release. Ramsey appeals, arguing that it was an error of law for the district court to reject his request for a sentence below the guidelines range. We affirm.

Ramsey was arrested for unlawful flight to avoid prosecution, and the police discovered a loaded gun by his bedside during a protective sweep of his residence. An investigation of his criminal history uncovered a 1996 conviction for mail fraud, and based on that conviction he was charged with possession of a firearm by a felon. Ramsey offered three different explanations for possessing the gun. He first told officers at the time of his arrest that the gun was his. Next, at the police station, he claimed that the gun was left in his apartment by the previous owner. Finally, while being transported to the federal courthouse, he told an officer that he purchased the gun for $50 from "an unknown black man." All three explanations were variations on the theme that Ramsey kept the gun for protection, but at no time before sentencing did he offer a basis for his need to protect himself. He only asserted generally that he kept the gun "because of safety reasons."

Before trial Ramsey moved to suppress the gun as well as two of his statements to the police—his statement at time of his arrest and his statement at the police station. The district court denied the motion to suppress the gun after concluding that the search of Ramsey's residence had been proper, and also refused to suppress the statements he made at the police station and during transport to the courthouse. But the court did suppress the statement he made at the time of his arrest because the officers failed to administer the *Miranda* warnings.

Following the hearing Ramsey pleaded guilty. Prior to sentencing he filed a "Notice of Departure Grounds from the Advisory Sentencing Guidelines," which, as relevant here, requested that the court impose a sentence below the guidelines range based on diminished capacity. In this request Ramsey alleged for the first time, based on representations he made to clinical psychologist Dr. Daniel Cuneo, that childhood abuse and a series of events in 1993 caused him to obtain the firearm found in his bedroom more than ten years later. Cuneo, relying strictly on his interview of Ramsey, testified at sentencing that Ramsey (who was 40 at the time of the offense) suffered physical and sexual abuse as a child and that this abuse "was a contributing factor for his strong need for protection." Cuneo related that Ramsey felt threatened by his girlfriend's ex-boyfriend, who vandalized vehicles belonging to he and his girlfriend and also watched the couple engage in sexual activity through a back window of their home in 1993. Cuneo opined that Ramsey's childhood, in conjunction with these events, did not "cause him to get a gun" but "impinged upon his reasoning, would have impinged upon his consciousness, would have made him have much greater need for protection."

The district court, taking Ramsey's motion for a "downward departure" at face value, announced that it could "depart downward" under U.S.S.G. § 5K2.13 based on diminished capacity but concluded that no "departure" was warranted in Ramsey's case:

In this case I just don't believe there is enough temporal relationship between the abuse that occurred as a child with this defendant and the felon in possession that occurred many years later. Further, I listened carefully to Dr. Cuneo. Although he did say there was a significant contribution based upon the prior abuse, I did not hear him say that the significantly reduced mental capacity contributed substantially to the commission of the offense. In fact, he said the opposite. The abuse did not cause him to get a gun, it caused him to enhance or heightened—to feel a need for protection. Based upon those conclusions also, I don't believe the departure would be warranted under diminished capacity.

The court then commented, "I think this information is certainly something I will take into consideration in the ultimate sentence, but I will not make a finding of diminished capacity."

The court went on to assign Ramsey a total offense level of 14 and placed him in criminal history category II, yielding an advisory imprisonment range of 18 to 24 months. After calculating this range, which Ramsey does not challenge, the court noted that it was "considering all of the factors under 18 U.S.C. Section 3553," including the "diminished capacity discussion that we had earlier." The court then imposed a sentence of 21 months, near the middle of the range.

On appeal Ramsey argues that the district court erred by failing to reduce his sentence based on diminished capacity. He asserts that the court committed legal error in rejecting his request for a "downward departure" because, in Ramsey's view, the court based its rejection on the fact that Ramsey's possession of the firearm "occurred many years later" than his childhood abuse and improperly concluded that the abuse did not affect his decision to possess a gun. Neither temporal relationship nor lack of substantial contribution, according to Ramsey, should be a basis for a court to reject a "departure" request under § 5K2.13. Ramsey recognizes that reasonableness is the ultimate measure of whether his sentence should stand, but argues that an error of law regarding a request for a "departure" makes the sentence unreasonable.

Ramsey's focus on § 5K2.13 and the pre-*Booker* language of "departures" is misguided. After *Booker*, matters having no effect on the calculation of the guidelines range are relevant only to the extent they affect the reasonableness of the sentence imposed. *See United States v. Vaughn*, 433 F.3d 917, 923-24 (7th Cir. 2006); *United States v. Arnaout*, 431 F.3d 994, 1003-04 (7th Cir. 2005); *see also United States v. Lange*, 445 F.3d 983, 987 (7th Cir. 2006). And as in other recent cases where defendants have tried to fit an argument in favor of a below-range

sentence into "the narrow review framework for departures" that applied before *Booker*, the discussion here is an "unnecessary diversion." *United States v. Laufle*, 433 F.3d 981, 986 (7th Cir. 2006); *see United States v. Walker*, 447 F.3d 999, 1005-06 (7th Cir. 2006); *United States v. Castro-Juarez*, 425 F.3d 430, 436 (7th Cir. 2005). As we have explained, "framing of the issue as one about 'departures' has been rendered obsolete" by *Booker*, and now "what is at stake is the reasonableness of the sentence, not the correctness" of a departure ruling "as measured against pre-*Booker* rulings." *United States v. Johnson*, 427 F.3d 423, 426 (7th Cir. 2005). Thus, Ramsey's attempt to quibble with the district court's understanding of § 5K2.13 is fruitless because the district court should never have entertained his request for a "departure" independent of its consideration of the § 3553(a) factors. The only relevant question for us is whether the district court fairly considered Ramsey's diminished capacity argument as a factor under § 3553(a) when it imposed his sentence. *See Laufle*, 433 F.3d at 986.

The district court adequately evaluated Ramsey's argument in favor of a lesser sentence, and Ramsey has failed to undermine the reasonableness of that sentence. The court, approaching the question (as did Ramsey) from the perspective of a request for a "downward departure," viewed his childhood abuse as too remote in time to have weakened his capacity to avoid possessing a firearm illegally, and not as a factor that had "contributed substantially to the commission of the offense." The court iterated its refusal to adjust Ramsey's sentence based on diminished capacity when it considered whether the § 3553(a) factors should mitigate his sentence. Though the court should not have engaged in the "unnecessary diversion" of first analyzing Ramsey's argument in the language of "departures," *Laufle,* 433 F.3d at 986, the court nevertheless considered Ramsey's plea for a below-range sentence and did not misunderstand its discretion to adjust his sentence. *Id*.

There is also no indication that Ramsey's sentence is unreasonable. Even applying our § 5K2.13 jurisprudence as a "useful starting point," *Castro-Juarez*, 425 F.3d at 434, Ramsey presented a weak case for a "departure." Dr. Cuneo testified that Ramsey "knew what he was doing was wrong," and we have remarked that "[a] single statement which could be more damaging to [a defendant's] motion for a downward departure is hard to imagine." *United States v. Ferron*, 357 F.3d 722, 725 (7th Cir. 2004). Ramsey's complains that the court should not have discounted childhood abuse because it occurred in the past, but he points only to the Ninth Circuit's opinion in *United States v. Menyweather*, 447 F.3d 625, 631, 634 (9th Cir. 2006), to suggest that critique is improper. *Menyweather*, though, did not comment on temporal proximity, though it did affirm a "downward departure" (Menyweather was first sentenced prior to *Booker*) based in part on a history of traumatic childhood events. *Menyweather*, 447 F.3d at 631. Ramsey also argues that it was unreasonable for the court to suggest that his alleged need for protection had not

"contributed substantially to the commission of the offense." But, the district court's approach to § 5K2.13 in this case is similar to the approach in *United States v. Roach*, in which we drew a distinction between a defendant's inability to fully "control unspecified wrongful behavior" and whether her "impairment was significant." 296 F.3d 565, 573 (7th Cir. 2002). As Cuneo testified, Ramsey's general need for security did not "cause him to get a gun," and he knew his action was wrong. Both statements support the district court's determination that Ramsey's alleged diminished capacity did not contribute substantially to his possession of the firearm. Thus, it cannot be said that the district court's failure to impose a below-guidelines sentence was unreasonable.

AFFIRMED.