UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued October 4, 2006
Decided November 21, 2006

**Before**

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 06-1440

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division |
| *v.* | No. IP 05-70-CR-01 |
| DAVID ANDREW TURNER, *Defendant-Appellant.* | David F. Hamilton, *Judge.* |

## O R D E R

David Turner pleaded guilty to nine counts of producing child pornography, 18 U.S.C. § 2251(a), (e), and one count of possessing child pornography, *id.* § 2252(a)(4)(B).  The district court calculated a total offense level of 53 and a Category V criminal-history score, resulting in a recommended guidelines sentence of life.  The district court sentenced Turner to a total of 100 years.  On appeal Turner argues that his sentence is unreasonable because 100 years is greater than necessary to comply with the purposes of punishment addressed at 18 U.S.C. § 3553(a)(2).

Turner married Kim Bussell in 1994 and in 2000 adopted her two children, including Jane Doe, who was born in 1988.  In November 2004, more than a year

after she stopped living with Turner, Jane Doe reported to her aunt and uncle that Turner had been taking explicit pictures of her since she was 12 or 13 years old.[1] Her aunt and uncle contacted authorities, who obtained a warrant to search Turner's home.

While executing the search warrant, police discovered approximately 95 computer disks containing pornographic images of minors.  Before they stopped counting, police found more than 7,000 images of child pornography, including videos depicting adult males having sexual intercourse with infants, and other sadistic photographs and videos of children under the age of six.  Two of Turner's disks contained images of Jane Doe when she was between the ages of 13 and 15, and another contained images of one of her friends at age 15.  Both victims identified Turner as the photographer for all of the images.  Based on this evidence, a grand jury indicted Turner on nine counts of producing child pornography and one count of possessing child pornography.  On the morning of trial, Turner pleaded guilty to the possession count and waived his right to a jury trial on the remaining counts.

During trial the government's first witness, Turner's wife and Jane Doe's mother, testified that Turner knew how old Jane Doe was based on birthday celebrations and her year in school.  Turner's wife also testified that he created two Internet websites: an adult subscription site entitled Anallinguslovers.com and a free site entitled Privatecollectionz.com.  She also identified each of the pictures underlying the nine counts of producing child pornography as a sexually explicit image of her daughter or her daughter's friend.  With one exception, she identified the backgrounds in all of the pictures as being either in her house or at the apartment of one of her co-workers, Sang Jang ("John Doe" in the record because, according to the government, he was not charged in the indictment), who spent time with Turner and who was a friend of the family.

---

[1]  At oral argument, Turner's counsel asked that we omit any recitation of the facts from our decision.  Although we understand counsel's concern about the nature of Turner's offense, we cannot feasibly discuss the reasonableness of Turner's sentence without describing the events leading to his conviction.  *See Krynicki v. Falk*, 983 F.2d 74, 75 (7th Cir. 1992) ("Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat . . . ."); *United States v. Mentzos*, 462 F.3d 830, 843 (8th Cir. 2006) (denying defendant's motion to file opinion under seal because circumstances of his case were insufficient to distinguish it from other criminal cases in which the opinions were published); *BBA Nonwovens Simpsonville, Inc. v. Superior Nonwovens, LLC*, 303 F.3d 1332, 1335 (Fed. Cir. 2002) (citing importance of public scrutiny on administration of justice in denying motion to issue opinion under seal).

The government's next witness, Jane Doe, identified Turner as her adoptive father and Jang as one of her mother's co-workers and a friend of Turner's. When she was about 11 or 12, Jane Doe said, Turner would supply her and her friends with alcohol and marijuana and take nude or partially nude pictures of them when they were drunk or high. After one of these photo sessions, Jane Doe accepted Turner's proposal that she pay off a concert ticket by posing for "artistic" photos with her shirt off, rather than by doing household chores as originally agreed. After that session, Turner proposed additional photo sessions in exchange for money and gifts. Jane Doe accepted and began posing for photo sessions approximately twice a month in exchange for new clothes, perfume, lingerie, shoes, alcohol, marijuana, cigarettes, and extended curfews.

As the months went on, Jane Doe testified, the nature of the photo sessions began to change; she began to pose completely naked, showing her genitalia, and using props as Turner directed. Additionally, before each photo session, Jane Doe would consume alcohol, marijuana, and cigarettes that Turner provided. The nature of the photo sessions changed once again, Jane Doe testified, when Turner told her that he would pull her out of school early to pose for nude photos with Jang, and that she and Jang would perform oral sex on each other. Jane Doe agreed to this because she liked Jang, but she told Turner she did not want to have intercourse because she was a virgin and because she said she was menstruating.

After Turner took Jane Doe out of school early the next day, he took her to Jang's apartment where she consumed five or six shots of tequila and a couple of beers that Turner and Jang supplied. Feeling the effects of the alcohol, she began to remove her clothing and performed oral sex on Jang at Turner's direction. She could not remember what happened next, she said, because the alcohol caused her to "black out." The next day, however, she was angry to discover both videos and photographs of her having intercourse with Jang. Jane Doe testified that Turner and Jang told her she had consented to intercourse, but she said she felt angry and betrayed because she remembered telling them that she did not want to have sex. Jane Doe asked Turner to destroy the photographs and video from the evening, and she believed that he did. Jang also apologized to her and gave her a necklace and concert tickets, which she accepted. The two began a dating relationship that Jang told her to keep quiet because he was married and she was too young. That relationship eventually ended in Jang's arrest.

Finally, Jane Doe identified herself in the pictures listed in eight of the producing counts and identified Turner as the photographer. She also described one instance in which Turner touched her and asked her to perform oral sex on him, which she did. In addition, Jane Doe testified, she once found a nude picture of herself on his for-profit website and asked him to remove it. At the time she finally

reported all of these incidents to her aunt and uncle, Jane Doe was in counseling for drug and alcohol abuse.

The government's final witness, Jane Doe's friend, testified that she was close to Jane Doe and her family and sometimes even referred to Turner and his wife as "Dad" and "Mom." She said that sometimes she stayed over at Jane Doe's house more than one night in a row after her relationship with her own mother began to deteriorate. While at Jane Doe's home, she said, she often smoked marijuana and drank whiskey with Jane Doe and Turner.

After Jane Doe and her mother moved out of the house in August 2003, Jane Doe's friend continued to visit Turner at his home and sometimes stayed overnight because her mother had kicked her out of her house and she had nowhere to live. While she was at Turner's home, she would drink alcohol and smoke marijuana and cigarettes with him, and Turner would show her his porn website. Turner also showed her nude and partially clothed pictures of Jane Doe, and explained that Jane Doe would allow him to take nude pictures of her in exchange for "favors." He also told her that he loved Jane Doe and would like to marry her if he wasn't her "father."

Because Turner was aware that Jane Doe's friend was broke and homeless, he paid her to do household chores such as cleaning the kitchen, doing his laundry, and mowing the yard. Then, around Thanksgiving 2003, Turner said he knew she was desperate for money and offered to pay her $100 if she would allow him to photograph her nude. She testified that she did not want to pose for the photos, and though she offered to pose topless or in her underwear rather than fully nude, Turner was not satisfied. After consuming whiskey and marijuana, she said, she finally agreed to let Turner take fully nude pictures, which she identified for the court as those related to one of the producing counts, and also allowed Turner to perform oral sex on her. The next day, though, she felt disgusted about what she had done and asked Turner to destroy the photographs.

At the conclusion of this testimony, Turner changed his plea on the nine remaining counts from not guilty to guilty. The district court sentenced Turner to the statutory maximum on each Count: 20 years on each of Counts 1 to 7; 30 years on each of Counts 8 and 9, which occurred after the PROTECT Act (Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act, Pub. L. No. 108-21, 117 Stat. 650 (2003)) raised the maximum sentence on these counts from 20 to 30 years; and 10 years on Count 10. The court divided Turner's sentence into four parts: Group 1 consisted of Counts 1, 2, 6, and 7 to be served concurrently for a total of 20 years; Group 2 consisted of Counts 3, 4, and 5 to be served concurrently for a total of 20 years; Group 3 consisted of Count 8 alone for a total of 30 years; and Group 4 consisted of Counts 9 and 10 to be served concurrently, for a

total of 30 years.  The court then determined that Turner would serve each sentencing group consecutively to one another for a total term of 100 years.

On appeal Turner does not dispute that the district court properly calculated his guidelines range as life imprisonment, but he argues that his 100-year overall sentence is greater than necessary to comply with the purposes of punishment dictated by Congress in § 3553(a)(2) and, thus, is unreasonable.  We give deference to the district court when reviewing the reasonableness of a sentence; we will not substitute our judgment for that of the sentencing court but instead will decide only whether the district court imposed the sentence it did for reasons that are logical and consistent with the factors set forth in § 3553(a).  *United States v. Williams*, 425 F.3d 478, 481 (7th Cir. 2005).  Furthermore, a sentence imposed within a properly calculated guidelines range is presumptively reasonable.  *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005).  And although the presumption may be rebutted by demonstrating that the sentence would be unreasonable when measured against the § 3553(a) factors, "it will be a rare Guidelines sentence that is unreasonable."  *Id.*

To begin, Turner first argues that *Mykytiuk* was "wrongly decided" and should be reversed because its presumption of reasonableness is inconsistent with § 3553.  But *Mykytiuk* provides that the presumption of reasonableness attached to any sentence may be rebutted by measuring the term against the § 3553 factors, as Turner requests his sentence be measured, so it is difficult to see how the decision is inconsistent with the statute.  Thus, we see no reason to overturn *Mykytiuk*.  *See United States v. Wallace*, 458 F.3d 606, 611 (7th Cir. 2006) (explaining that despite a conflict among the circuits regarding the presumptive reasonableness of properly calculated guidelines sentences, this court's position outlined in *Mykytiuk* remains firm); *see also, e.g. United States v. Mendoza*, 457 F.3d 726, 730 (7th Cir. 2006); *United States v. Garner*, 454 F.3d 743, 751 (7th Cir. 2006); *United States v. Juarez*, 454 F.3d 717, 720-21 (7th Cir. 2006); *United States v. Blue*, 453 F.3d 948, 952 (7th Cir. 2006).

In an attempt to rebut the presumptive reasonableness of his appropriately calculated guidelines sentence, Turner next argues that his sentence is unreasonable because 100 years is greater than necessary to comply with § 3553(a)(2), which dictates that a sentence reflect the seriousness of the offense, promote respect for the law, provide just punishment, adequately deter crime, protect the public from further crimes by the defendant, and "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  The record does not support Turner's argument.  Instead, it shows that the district court (Judge David F. Hamilton) thoroughly considered not only § 3553(a)(2), but all of the § 3553 factors in determining an appropriate sentence.

First, the district court explained that it considered each of the relevant factors under § 3553, including the applicable guidelines range of life imprisonment. Regarding the nature of the offense under § 3553(a)(1), the court noted the age of the victims and the defendant's relationship to one of them, his use of alcohol and drugs to overcome both victims' reluctance to participate in the abuse, and the fact that Turner engaged in actual sexual conduct with both victims. The court also evaluated Turner's sentence under § 3553(a)(2) when it acknowledged that sentences as severe as Turner's are "intended for the worst crimes and worst offenders short of capital punishment" and explained its belief that the sentence would provide just punishment to Turner and would deter both Turner and others who might commit similar crimes.

To the extent Turner argues that his sentence is unreasonable under § 3553(a)(6) because the court failed to account for sentencing disparities among defendants with similar records, his argument also fails. We have explained that "[i]t is not enough for a defendant to argue that a few cases from any particular circuit seem to cast doubt on his sentence." *United States v. Newsom*, 428 F.3d 685, 689 (7th Cir. 2005). To evaluate sentencing disparities, it is not just the crime of conviction and the total length of the sentence that is pertinent; the specific facts of the crimes and the defendant's individual characteristics should also be considered. *Id.* Here, the district court noted that Turner's offense was severe given the huge number of images he produced and possessed and the number of times he repeatedly exploited his victims over the course of several years and the court was entitled to conclude, as it did, that the differences in the facts of each of the cases Turner cited justified a more severe sentence for Turner. *See id.* It is also notable that, in each of the cases Turner cited, the defendants committed all of their crimes before enactment of the PROTECT Act, which raised the minimum and maximum penalties for producing child pornography, whereas Turner's convictions include child-pornography crimes that occurred after the PROTECT Act became effective on April 30, 2003. 18 U.S.C. § 2251(a), (e); Pub. L. No. 108-21, 117 Stat. 650 (2003).

Having failed to rebut the presumption, we are left with a sentence within the guidelines range that even Turner does not dispute was appropriately calculated. And we note that the Eleventh Circuit recently upheld a sentence of 140 years imprisonment where a defendant qualified for a life sentence under the guidelines with an offense level of 43, 10 levels below Turners' and a Category V criminal history after he was convicted of two counts of producing child pornography and one count of distributing it. *United States v. Johnson*, 451 F.3d 1239, 1241 (11th Cir. 2006). In *Johnson*, as here, the defendant did not dispute the guidelines range of life imprisonment, and thus the Eleventh Circuit concluded that sentencing the defendant to 50 years on two counts and 40 years on the other count to be served consecutively for a total of 140 years was appropriate under U.S.S.G.

§ 5G1.2(d) to ensure life imprisonment and was not unreasonable.  *Id.* at 1243, 1244.

Finally, although Turner's counsel maintains that the 100-year sentence is unreasonable, we asked at oral argument what a reasonable sentence, given a "life" guideline calculation, would be, but he gave no firm response and acknowledged he would have argued that even a 50-year sentence was unreasonable.  Thus, we conclude that, because the district court engaged in a detailed analysis of all of the § 3553 factors in explaining the sentence it imposed, there is no support for Turner's argument that his sentence was unreasonable.  Accordingly, the judgment of the district court is AFFIRMED.