In the
United States Court of Appeals
For the Seventh Circuit

No. 01-2720

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

STEVEN CROSS,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 CR 354--Charles P. Kocoras, Judge.

Argued April 11, 2002--Decided May 10, 2002


   Before CUDAHY, DIANE P. WOOD, and EVANS,
Circuit Judges.

   EVANS, Circuit Judge.  Steven Cross is a
bad seed. Since the late 1980's, he has
had repeated brushes with the criminal
law of the state of Illinois, translating
into multiple felony convictions for
various species of theft and fraud. In
1994 he burnished his reputation as a
swindler with federal convictions for
bank fraud and the use of unauthorized
access devices. While on supervised
release for the federal violations, Cross
cooked up a new business plan: he falsely
held himself out, through an assortment
of business names, addresses, phone
numbers, aliases, and bank accounts, as
being an authorized dealer of Beanie
Babies and Pokemon playing cards, which
are (or were, it's often hard to tell)
all the rage with kids. He offered
customers, mainly retailers, a discounted
price for these toys if they would send
him advance payment. In national
publications he also advertised $20
memberships in the "International Beanie
Baby Club," promising various benefits.
In all but a few instances, when anyone
sent him money--and here's the genius of
the plan--he didn't send the promised
goods. Although Cross might have thought
of this as a clever way of maximizing
profit, most people think of it as
getting something for nothing and, when

it's achieved with the help of false promises and interstate mail or wires, it's illegal. 18 U.S.C. sec.sec. 1341, 1343. The government indicted Cross--after he made off with approximately $275,000--on 12 counts of mail and wire fraud. Cross pled guilty to the first three counts of mail fraud, and the case proceeded to sentencing.

Applying the United States sentencing guidelines, the district judge (Kocoras, J.) calculated Cross's offense level as 21. Cross had 20 criminal history points, putting him in category VI, which is the highest criminal history category. The combination of an offense level of 21 with a category VI criminal history produces a sentencing range of 77 to 96 months. The government argued that because Cross's 20 criminal history points were 7 more than category VI'sminimum number, and the majority of the other categories have ranges of only 3 points, category VI did not adequately reflect the seriousness of Cross's past criminal conduct and the likelihood of his committing future crimes. Accordingly, it moved for an upward departure under sec.4A1.3 of the guidelines.

Judge Kocoras agreed . . . emphatically. The judge told Cross: "[Y]ou approach that category of one who is so callous, so contemptuous of your fellow man, so contemptuous of the criminal justice system, that everything you say and do has a ring of falsity and hollowness to it." Cross, the judge observed, had such "a capacity for lying and cheating . . . as to give new meaning to the word recidivist." Judge Kocoras went on to tell Cross that although he had been in prison before, "you come out and even before your ability to breathe fresh air is customary, you start cheating, again." He concluded: "I am convinced beyond any question--beyond any question--that you are incapable of following the law. Incapable of it." Judge Kocoras then departed from the high point of the relevant guideline range (96 months) and sentenced Cross to the maximum term under the mail fraud statute (60 months) for each of the three counts and ordered the sentences to run consecutively, a total of 180 months.

Cross challenges this sentence on

appeal. We review a district court's upward departure under sec.4A1.3 by a three-part test. United States v. Peterson, 256 F.3d 612, 614 (7th Cir. 2001). First, a sentencing court must state adequate grounds to support the departure. We review this determination de novo. Id. Second, we review for clear error whether the facts cited to support the departure actually exist. Id. Third, the degree of departure must be linked to the structure of the guidelines, a determination we also review deferentially. Id.

It bears emphasizing that Cross does not challenge Judge Kocoras's determinations as to the first two issues. There is no dispute that Cross's criminal activities span 4 presidential administrations and some 15 baseball seasons. Children born in the era of Cross's earliest recorded cons are now getting dates for the prom. There is no dispute that, despite stays in prison and other forms of punishment, Cross's present crime involves the same pattern of trickery and deceit prevalent throughout his criminal history. There is no dispute that Cross executed the Beanie Baby/Pokemon stratagem while on supervised release for previous federal convictions. There is no dispute that this case evinces the same callous disregard for victims that Cross apparently has maintained since his early adulthood. There is no dispute, in short, that Cross is likely to commit further crimes when given the chance. Nor does Cross seriously dispute that these facts justify a departure under sec.4A1.3. The only dispute is whether Judge Kocoras erred by using an improper method for determining the degree of the departure.

But, on that point, Cross has some traction. Section 4A1.3 provides that, where an upward departure from a category VI range is warranted, "the court should structure the departure by moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case." Some popular methods that we have approved, although surely not the exclusive ones, are to add one offense level for every 3 points above 13 (category VI's minimum) or 15 (its inferred maximum when read in light of categories III, IV, and V). See, e.g.,

Peterson, 256 F.3d at 615-16 (affirming district judge's addition of one offense level for every 3 criminal history points exceeding 13); United States v. Ewing, 129 F.3d 430, 437 (7th Cir. 1997) (affirming district judge's addition of one offense level for every 3 criminal history points exceeding 15); United States v. McKinley, 84 F.3d 904, 910-11 (7th Cir. 1996) (same as Ewing). Variations of that approach, which we mention only for illustrative purposes, might have put Cross in a range of 92-115 months or 100-125 months or 110-137 months. Other approaches to linking the departure to the structure of the guidelines also may have been possible.

Instead, staring at a criminal with numerous opportunities for but no record of rehabilitation, Judge Kocoras, a most capable veteran jurist, simply imposed the longest sentence statutorily possible in order to achieve the maximum incapacitation possible. Instead of trying to translate this into guideline gobbledygook about offense levels, he commendably admitted:

And, so, while I am told by the guideline manuals and the Court of Appeals where, if I were to depart upward, to find some measure in the guidelines in order to find the number, do you want to know the truth of it? And I will state it on the record. There is no number that the guidelines supply me that brings me some measure of reason.

The only thing that guides me, Mr. Cross, in my consideration is to incapacitate you for as long as I can.

You have cheated enough people for a long time and it is time you were told you cannot do it any more. And that, purely and simply, has no limit other than the statutory limitation.

Defense counsel asked Judge Kocoras whether he was tying the sentence to a particular offense level. The judge responded: "None will support it. I mean, you can pick any number you want." He added:

At Level 29, which is easily within the facts of this case, you have a range of 151 to 188 months.

Now, fifteen years measures at, what? Somewhere written [sic] that range. So, that is the level I would pick, quite frankly, but I am capped by the statute.

Judge Kocoras's statements make clear that he was not tailoring the departure by increasing the offense level in response to the extra criminal history points but, rather, reaching a result dictated by his stated sentencing goal and then referencing, at defense counsel's request, the offense level and sentencing range housing that number.

Cross describes this as just the sort of "visceral" sentencing that the guidelines did away with. Visceral is an antonym of rational, and we don't think that sentencing a practiced recidivist to the statutory maximum is a result to which reason could not lead a judge in this case. But Cross's larger argument stands: on some points, the guidelinesreplace the district judge's reasoning with their own, and this is such a case. The way in which Judge Kocoras translated his conclusions about Cross's past criminal conduct and future likelihood of wrongdoing into a sentence ran afoul of sec.4A1.3 and, therefore, was an abuse of discretion. Although we sympathize with the judge and can understand his disgust with Cross, the guidelines--perhaps unwisely-- cabin a judge's sentencing sensibilities in cases such as this. And so we conclude that the case must be remanded for resentencing in conformity with the departure approach called for in sec.4A1.3 as we have interpreted that provision.

One last point. Cross asks that under Circuit Rule 36 we direct on remand that this case be reassigned to a different judge because of possible bias against Cross. Judge Kocoras's error was one of method, not substance. Any sentencing judge will evaluate Cross's elaborate criminal history and use it to depart from the range (the facts and justification for the departure not being contested). The only question is how to reach the magic number, a determination that we are confident Judge Kocoras will make this time using the method prescribed by the guidelines. The case will be remanded to him.

REVERSED.