In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 05-1195

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SALVADOR CASTRO-JUAREZ,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Southern District of Illinois.
No. 04 CR 30094—**David R. Herndon**, *Judge.*

———————

ARGUED AUGUST 2, 2005—DECIDED OCTOBER 3, 2005

———————

Before COFFEY, MANION, and ROVNER, *Circuit Judges.*

MANION, *Circuit Judge.* Salvador Castro-Juarez pleaded guilty to being in the United States unlawfully after his removal following a felony conviction, 8 U.S.C. § 1326(a), (b)(1). The district court sentenced him after *United States v. Booker*, 125 S. Ct. 738 (2005), to 48 months, well below the 10-year statutory maximum but more than twice the 21-month upper end of the advisory guideline range. On appeal, Castro-Juarez's sole contention is that a sentence of 48 months is unreasonable in this case. This appeal requires us to gauge the "reasonableness" of a sentence above the advisory guideline range, a process that continues

to evolve in our decisions applying *Booker*. We hold only that the district court did not sufficiently explain its choice of sentence, and for that reason we vacate Castro-Juarez's sentence and remand for resentencing.

## I.

Police in Bond County, Illinois, arrested Castro-Juarez in July 2004. Castro-Juarez, a felon, had twice been removed from the United States, most recently in July 1995, and had not received permission to reenter. After Castro-Juarez pleaded guilty in September 2004 to violating § 1326(a) by returning to the United States, the probation officer prepared a presentence investigation report assigning a base offense level of eight. U.S.S.G. § 2L1.2(a). An upward adjustment of four levels based on Castro-Juarez's prior felony convictions, U.S.S.G. § 2L1.2(b)(1)(D), and a downward adjustment of two levels for acceptance of responsibility, *id.* § 3E1.1, yielded a total offense level of 10. The presentence report identifies nine convictions and the corresponding number of criminal history points:

(1) simple possession of heroin, incurred in 1986 (0 points);

(2) simple possession of narcotics, incurred in 1995 (1 point);

(3) giving false information to a police officer and driving without proof of insurance or a driver's license, incurred in 1996 (0 points);

(4) theft (of a pair of shoes), incurred in 1997 (1 point);

(5) harassment (he struck his girlfriend), incurred in 1998 (1 point);

    (6)  third degree assault (during a bar fight), incurred in 1998 (1 point);

    (7)  harassment and child abuse (he assaulted his girlfriend in the presence of two children), incurred in 1999 (2 points);

    (8)  theft (shoplifting), incurred in 2000 (1 point);  and

    (9)  domestic battery (he struck his wife), incurred in 2002 (1 point).

Since multiple offenses that produce just one criminal history point cannot yield more than four total points, these convictions counted for only six points. *See* U.S.S.G. § 4A1.1(c). Two points were added because Castro-Juarez was under a criminal justice sentence when he committed the § 1326(a) violation for which he was being sentenced. *See* U.S.S.G. § 4A1.1(d). The resulting eight criminal history points placed Castro-Juarez in criminal history category IV. *See* U.S.S.G. Ch. 5, Pt. A. Based on a total offense level of 10 and a criminal history category of IV, the probation officer calculated a guideline imprisonment range of 15 to 21 months. *See id*.

The district court sentenced Castro-Juarez on January 14, 2005, two days after the Supreme Court decided *Booker*. The court, aware of that decision, acknowledged that its choice of sentence should take into account the various factors set out in 18 U.S.C. § 3553(a). After inviting allocution from Castro-Juarez, the court told him:

> The problem I have is that, as you say, you've been here a long time, you've always been here illegally, you've been here at least three times that you've been caught illegally. You have a horrible history with respect to your activities while you've been in this country. You've engaged in many many illegal acts, and one of the great

things that bothers me about your activity while you've been here is several of these illegal acts have been violent acts. You've engaged in a number of crimes that have involved physical violence against others, including the women you have— woman or women you have been involved with, and at times have endangered children. So you have history that is very terrible. You have done some time in jail. You have not done very much time in jail, but you don't seem to get the picture that when you do bad things in this country, bad things are going to happen. So I'm not at all impressed with your behavior while you've been in our country.

The court added that "the Guidelines in your case don't seem to take into account a person who has re-entered now on three occasions and who has the kind of criminal history that you have, and so I'm not going to apply the Guideline in your case." The 48-month term the court chose is more than twice the high end of the guideline range, and more than three times the low end of the range that the prosecutor recommended as an appropriate sentence.

## II.

Castro-Juarez's sole argument on appeal is that 48 months is an unreasonable sentence. In *Booker* the Supreme Court explained that sentencing judges must be guided by the factors in 18 U.S.C. § 3553(a), including the applicable guideline range, *id*. § 3553(a)(4); our task is to review the resulting sentence for "unreasonableness" in light of those same factors. *Booker*, 125 S. Ct. at 765-66; *see United States v. Alburay*, 415 F.3d 782, 786 (7th Cir. 2005); *United States v. Askew*, 403 F.3d 496, 509 (7th Cir. 2005). After *Booker* we

have said that a sentence within a properly calculated guideline range "is entitled to a rebuttable presumption of reasonableness," *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005). "[T]he farther the judge's sentence departs from the guidelines sentence (in either direction—that of greater severity, or that of greater lenity), the more compelling the justification based on factors in section 3553(a) that the judge must offer in order to enable the court of appeals to assess the reasonableness of the sentence imposed." *United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005). Justifying a sentence outside the range does not require canvassing the statutory factors: " 'Judges need not rehearse on the record all of the considerations that 18 U.S.C. § 3553(a) lists; it is enough to calculate the range accurately and explain why (if the sentence lies outside it) this defendant deserves more or less.' " *Id.* (quoting *United States v. George*, 403 F.3d 470, 472-73 (7th Cir. 2005)). Therefore, we are not asked to decide here whether 48 months *could* be a reasonable sentence; our function is to assess whether the district court's choice of sentence is adequately explained given the record before us. Here we must determine whether the court's articulated reasons for jumping from 21 to 48 months are sufficiently compelling on this record to satisfy us that the term imposed is reasonable.

As an initial matter, the government argues that we should not even reach this question because after the 48-month term was announced Castro-Juarez did not explicitly object to the sentence as "unreasonable." In the government's view, we should review Castro-Juarez's sentence only for "plain error" rather than for reasonableness.

The government's position has some support. In the context of supervised release revocations, where review of a prison term imposed upon revocation has always been for

reasonableness, this court has held that failing to object in the district court explicitly on reasonableness grounds forfeits the argument for appeal. *See United States v. Harvey*, 232 F.3d 585, 587 (7th Cir. 2000); *United States v. Marvin*, 135 F.3d 1129, 1135 (7th Cir. 1998). Our decisions after *Booker*, however, have imposed no similar requirement and, indeed, assume the absence of any need to object to a sentence as unreasonable after its pronouncement. In appeals involving defendants who were sentenced before *Booker* without anticipating the decision or even recognizing the constitutional issues at stake, we routinely review the sentence for reasonableness notwithstanding the lack of objection. *See, e.g.*, *United States v. Stewart*, 411 F.3d 825, 829 (7th Cir. 2005); *United States v. Ramsey*, 406 F.3d 426, 434 (7th Cir. 2005); *United States v. Paladino*, 401 F.3d 471, 484 (7th Cir. 2005).

We believe that the unstated assumption in our post-*Booker* decisions is sound. To insist that defendants object at sentencing to preserve appellate review for reasonableness would create a trap for unwary defendants and saddle busy district courts with the burden of sitting through an objection—probably formulaic—in every criminal case. Since the district court will already have heard argument and allocution from the parties and weighed the relevant § 3553(a) factors before pronouncing sentence, we fail to see how requiring the defendant to then protest the term handed down as unreasonable will further the sentencing process in any meaningful way. Certainly we do not mean to discourage district courts from entertaining argument about the reasonableness of a sentence after its pronouncement, nor do we suggest that our longstanding insistence on proper objections as to other sentencing issues, e.g., the application of a guideline adjustment, should be relaxed. All we conclude here is that our review of a sentence for reasonableness is not affected by whether the defendant had

the foresight to label his sentence "unreasonable" before the sentencing hearing adjourned.

We thus turn to the merits. Both parties suggest that a useful starting point in evaluating the reasonableness of Castro-Juarez's sentence is to look to pre-*Booker* law by analogy and ask how the sentence would have faired under decisions that analyze the reasonableness of upward departures. We have drawn such analogies implicitly in other post-*Booker* appeals where the sentence was imposed before the date of that decision. *See United States v. Paulus*, No. 04-3092, 2005 WL 2000984, at *4 (7th Cir. Aug. 22, 2005); *United States v. Cunningham*, 405 F.3d 497, 504-06 (7th Cir. 2005); *see also United States v. Shannon*, 414 F.3d 921, 924 (8th Cir. 2005) ("In light of our conclusion that the upward departure from the guidelines was permissible, the sentence imposed was consistent with the now-advisory guidelines, and this is generally indicative of reasonableness."). In this instance the district court's comments at sentencing—those that go beyond reciting § 3553(a)—focus on Castro-Juarez's criminal history, so the parties look to U.S.S.G. § 4A1.3(a)(1); that guideline expressly encourages district courts to consider imposing a sentence above the guideline range if "the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." The district court paraphrased § 4A1.3(a)(1) when explaining its sentence, so our understanding of the court's rationale for selecting a term of 48 months is aided by decisions interpreting this guideline. For that reason we follow the suggestion of the parties to examine Castro-Juarez's sentence in light of § 4A1.3, but we do so with the caveat that the question before us is ultimately the reasonableness of the sentence the district court imposed, not the court's application of a guideline authorizing an upward departure.

Prior to *Booker* we analyzed upward departures under § 4A1.3 using a standard that required (1) "adequate grounds to support the departure," (2) evidence that "the facts cited to support the departure actually exist," and (3) a sufficient link between the degree of departure and "the structure of the guidelines." *United States v. Cross*, 289 F.3d 476, 478 (7th Cir. 2002). Under this test, says Castro-Juarez, a sentence of up to 33 months would have been reasonable, but a term of 48 months is not. The government, for its part, accepts that *Cross* identifies the relevant test but never hazards a view about the outcome if *Cross* were applied to these facts.

The first prong of *Cross* is not problematic. The district court cited Castro-Juarez's repeated cycles of unlawful entry and deportation, the "horrible" criminal record he incurred living in the United States, and his history of violent acts affecting the women and children in his life. The court opined that much of Castro-Juarez's criminal history was undercounted due to the short sentences involved and the number of violations.

The second prong is probably not in doubt either. With one significant exception, the observations that spurred the district court to exceed the guideline range concern facts that are undisputed. The exception is Castro-Juarez's conviction for simple possession of heroin, which the probation officer incorrectly characterized as a "sale" of heroin. The government seeks to minimize the error because the age of the conviction was enough to keep it from counting towards Castro-Juarez's criminal-history score no matter what the crime. Nevertheless, it is not certain that the misinformation about the offense nature of the conviction did not color the sentencing court's judgment that Castro-Juarez's criminal history was understated.

The real question, though, is the third prong of *Cross*, which commands that the degree of departure be "linked to the structure of the guidelines." *Cross*, 289 F.3d at 478. Before *Booker* the adequacy of that linkage affected whether we would defer to the sentencing court's choice as to the degree of departure. *United States v. Scott*, 914 F.2d 959, 963 (7th Cir. 1990); *United States v. Gaddy*, 909 F.2d 196, 199 (7th Cir. 1990). The analysis was guided by U.S.S.G. § 4A1.3(a)(4)(A), which directed the sentencing court to use as a reference "the criminal history category applicable to defendants whose criminal history or likelihood to recidivate most closely resembles that of the defendant's." In the event that the court concluded that even Category VI was inadequate, the judge would "move incrementally down the sentencing table to the next higher offense level in Category VI" until reaching "a guideline range appropriate to the case." U.S.S.G. § 4A1.3(a)(4)(B).

Castro-Juarez suggests that 10 hypothetical criminal history points would have accounted for the district court's stated concerns: 1 point for his first illegal entry, a misdemeanor that was never charged; 2 points for his first illegal re-entry, a felony that was never charged; 2 points to add back those excluded under § 4A1.1(c); 2 points to elevate the seriousness of his drug convictions, the first of which resulted in zero points because it was too old; and 3 points to elevate the seriousness of his misdemeanor domestic-violence convictions by treating all of them as if he had been sentenced to the maximum jail time on each. Ten more criminal history points (the government does not criticize Castro-Juarez's methodology or argue that a number greater than 10 is more realistic) would have taken Castro-Juarez's total to 18, five more than the minimum for Category VI. *See* U.S.S.G. Ch. 5, Pt. A. The sentencing court would then have looked at successively higher offense

levels until it found "a guideline range appropriate to the case." U.S.S.G. § 4A1.3(a)(4)(B).

The 48-month sentence here is consistent with a total offense level of 15 and Category VI criminal history, which equates to a guideline range of 41 to 51 months. But the district court did not explain how it reached this point in the sentencing table, and under the mandatory guidelines, sentencing courts were required to "employ a step-by-step process" when departing upward under § 4A1.3. *United States v. Angle*, 315 F.3d 810, 813 (7th Cir. 2003). There was not a strict standard for the level of articulation required, *Scott*, 914 F.2d at 964, but examples of acceptable methods show a fairly rigorous methodology: "Some popular methods that we have approved, although surely not the exclusive ones, are to add one offense level for every 3 points above 13 (category VI's minimum) or 15 (its inferred maximum when read in light of categories III, IV, and V)." *Cross*, 289 F.3d at 478. Here, the five points above 13 in Castro-Juarez's proposal would have resulted in moving down just one offense level, from an offense level of 10 to 11, which at Category VI would have yielded a sentencing range of 27 to 33 months. This is how Castro-Juarez arrives at his contention that a departure of up to 33 months would have been reasonable under *Cross*. In contrast, it would have required adding 23 criminal history points to Castro-Juarez's eight in order to reach the sentence handed down by the court. Accordingly, if this appeal had reached us before *Booker*, we would have concluded that a 48-month sentence is not adequately tied to the structure of the guidelines.

We reiterate, however, that we have looked to § 4A1.3 and *Cross* only by way of analogy, and while Castro-Juarez's sentence might not have been sustainable as an "upward

departure" before *Booker*, it does not follow that a term of 48 months is necessarily unreasonable. Before *Booker*, we recognized that district courts were required to sentence within the guideline range except in unusual cases, *United States v. Johnson*, 347 F.3d 635, 640 (7th Cir. 2003), and anything but a loose comparison to pre-*Booker* departure cases would vitiate the post-*Booker* discretion that sentencing courts enjoy. All that is necessary now to sustain a sentence above the guideline range is "an adequate statement of the judge's reasons, consistent with section 3553(a), for thinking the sentence that he has selected is indeed appropriate for the particular defendant." *Dean*, 414 F.3d at 729.

In the end we are not persuaded that the district court met this standard. The court did recite the § 3553(a) factors at sentencing:

> My sentence must reflect the seriousness of your offense, must promote respect for the law, and must provide a just punishment for your offense. It must afford an adequate deterrence against criminal conduct and to protect the public from further crimes that you may perpetrate. It is to provide you with immediate educational, vocational training, medical care or other correctional treatment in the most effective manner. I must consider the various kinds of sentences available and I must consider the Guideline sentence that is called for by the Federal Sentencing Guidelines. I must avoid unwarranted sentencing disparities among defendants with similar records.

Having identified the relevant factors, however, the judge did not single out any aspect except criminal history. The court was understandably troubled by Castro-Juarez's history of several times entering the United States

illegally, committing crimes once in the country, being deported, and then beginning the cycle again. The judge also expressed dismay over Castro-Juarez's history of violence, especially that directed against his girlfriend. These are significant concerns, but they overlap and, as far as we can tell on this record, are encompassed by the district court's explicit reference to the text of § 4A1.3. We understand that reference to mean that the district court was itself drawing an analogy to § 4A1.3, yet we have seen that the analogy does not fully explain the 48-month sentence. And because that sentence is more than double the high end of the guideline range, we cannot conclude that the court's explanation is sufficiently compelling, *see Dean*, 414 F.3d at 729, to uphold the court's exercise of discretion.

### III.

We hold, based on the record before us, that the district court's explanation for imposing a sentence of 48 months is not adequate for us to conclude that the term imposed is reasonable. Although we allow for the possibility that further refinement on remand may well enable the district court to impose a similar sentence that could be sustained as reasonable, that is not the case presently before us. Accordingly, Castro-Juarez's sentence is VACATED, and the case is REMANDED for resentencing.

A true Copy:

    Teste:

                                        _____
                                        *Clerk of the United States Court of*
                                        *Appeals for the Seventh Circuit*