NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 13, 2007
Decided November 30, 2007

**Before**

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 07-1808

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Eastern District of Wisconsin |
| *v.* | No. 05-CR-320 |
| MAURICIO JIMENEZ-DEGARCIA, *Defendant-Appellant*. | Lynn Adelman, *Judge*. |

**O R D E R**

Mauricio Jimenez-DeGarcia is a Mexican citizen who has repeatedly, and illegally, entered the United States. Following his most recent entry, he was arrested in 2004 on Wisconsin charges to which he eventually pleaded guilty. Although Wisconsin promptly notified federal immigration officials of Jimenez-DeGarcia's presence in the Badger State, he was not indicted on an illegal re-entry charge until sixteen months later. The government then waited another eight months, while Jimenez-DeGarcia completed serving his state sentence, before arraigning him. Jimenez-DeGarcia then pleaded guilty in federal court to illegal re-entry following deportation for an aggravated felony. He argued for a sentence below the guidelines range of 70 to 87 months based on, as relevant to this appeal, his missed opportunity to serve his state and federal sentences concurrently. The

district judge (Hon. Lynn Adelman) rejected this argument but imposed a sentence of 60 months based on certain of Jimenez-DeGarcia's personal characteristics. Jimenez-DeGarcia now appeals his sentence, but he fails to show that it is unreasonable. Thankfully for him, the government has not cross-appealed.

Jimenez-DeGarcia first came to the United States illegally in 1991. He was deported to Mexico in 1993. He returned and was again deported in 1996. Undeterred, Jimenez-DeGarcia returned once again, and in 2002 Milwaukee police arrested him after he led them on a high-speed chase in which one of his passengers threw a pistol from the moving vehicle.[1] When he failed to appear at a court hearing in December 2002, a state judge issued a bench warrant for his arrest. Jimenez-DeGarcia must have returned to Mexico because in October 2003 federal authorities stopped him as he attempted to re-enter the United States by wading across the Rio Grande River. After he served a short 70-day sentence for illegal re-entry, he was deported to Mexico for the third time.

Jimenez-DeGarcia must have found a way to enter the country again because in August 2004, he was arrested in Milwaukee on the 2002 state bench warrant. That month, Milwaukee officials notified the Bureau of Immigration and Customs Enforcement of Jimenez-DeGarcia's presence in the country. Three months after receiving notification of his illegal presence, federal agents visited Jimenez-DeGarcia in state custody and confirmed that he had illegally re-entered the country.

The government did not immediately indict Jimenez-DeGarcia for his illegal re-entry. Instead, it waited until December 2005, about sixteen months after it learned of his return. The government explained to the district court that the delay was caused by a separate investigation into other crimes that Jimenez-DeGarcia may have been involved in. Ultimately that investigation did not lead to any additional charges. Jimenez-DeGarcia rejects the government's explanation for its delay but offers no evidence to support a different explanation.

While the government investigated him during 2005, Jimenez-DeGarcia remained in state custody and his state charges remained pending. Less than a month after his indictment in federal court in December 2005, the government lodged a detainer against Jimenez-DeGarcia, which required that state authorities remand him to its custody upon his release. The day after the detainer was filed, Jimenez-DeGarcia pleaded guilty in state court to being a felon in possession of a firearm and fleeing/eluding an officer. The state judge sentenced him to two years

---

[1] When arrested, Jimenez-DeGarcia claimed his name was "Fernando Garcia-Jimenez."

imprisonment and two years extended supervision. While in state custody, Jimenez-DeGarcia did not invoke his rights under the Interstate Agreement on Detainers, which would have required that the federal prosecution begin within six months. As a result, the government waited while he completed his state sentence before arraigning him. On August 23, 2006, about two years after the government had first received notice of Jimenez-DeGarcia's presence in the country, he completed his state sentence and he was taken into federal custody and arraigned. Three months later, he pleaded guilty to illegal re-entry following deportation for an aggravated felony. *See* 8 U.S.C. § 1326(a), (b)(2).

On April 2, 2007, Judge Adelman held a sentencing hearing. Judge Adelman first calculated a guidelines imprisonment range of 77 to 96 months, the accuracy of which is not in dispute. Jimenez-DeGarcia argued for a below-guidelines sentence based on pre-indictment delay. Judge Adelman rejected the argument because even if the prosecution had proceeded more quickly, he said he would not have imposed a concurrent sentence. Judge Adelman also noted that there was no evidence of bad faith on the part of the government and that Jimenez-DeGarcia took no action under the Interstate Agreement on Detainers to speed up the prosecution. But Judge Adelman did accept Jimenez-DeGarcia's other arguments about his personal characteristics and imposed a below-guidelines sentence of 60 months based on Jimenez-DeGarcia's assertion that he stayed in the United States only to earn money to support his children in Mexico and because he had improved himself while in state custody.

On appeal, Jimenez-DeGarcia's sole argument is that his sentence, although below the guidelines imprisonment range, is unreasonably high because it was not reduced further to account for the government's delay in starting its prosecution. He contends that if the government had initiated its prosecution nearly two years earlier, closer to August 2004 when it first became aware of his presence in the country, he might have been able to serve his federal and state sentences concurrently.

We review a sentence for reasonableness in light of the factors set forth in 18 U.S.C. § 3553(a). *United States v. Williams*, 425 F.3d 478, 480 (7th Cir. 2005). A sentence within the guidelines range is, of course, presumed to be reasonable. *Rita v. United States*, 127 S. Ct. 2456, 2465 (2007); *United States v. Gama-Gonzalez*, 469 F.3d 1109, 1110 (7th Cir. 2006). But, as we have explained, "[i]t is hard to conceive of below-range sentences that would be unreasonably high." *United States v. George*, 403 F.3d 470, 473 (7th Cir. 2005).

Before *Booker*, several courts of appeals held that unreasonable pre-indictment delay was a valid ground for a downward departure under U.S.S.G. § 5K2.0. *United States v. Stuart*, 384 F.3d 1243, 1247 (11th Cir. 2004) (collecting

cases). After *Booker,* these circuits continue to consider unreasonable delay to be a valid basis for a below-guidelines sentence. *See United States v. Castro-Juarez*, 425 F.3d 430, 434 (7th Cir. 2005). Despite some uncertainty about what standards to apply to claims of pre-indictment delay, the circuits that allow lower sentences on that basis all require a showing that the delay actually prejudiced the defendant combined with a showing that either the length of delay was unreasonable or that it was caused by bad faith on the part of the government. *Stuart*, 384 F.3d at 1247. We have not previously decided whether a below-guidelines sentence based on pre-indictment delay can ever be appropriate. *See United States v. Lechuga-Ponce*, 407 F.3d 895, 897 (7th Cir. 2005). But we have affirmed a district court's refusal to depart downward based on a delay of about three-and-a-half years because the delay was justified by the defendant's ongoing criminal conduct. *United States v. Dote*, 328 F.3d 919, 926 (7th Cir. 2003).

Assuming without deciding that a below-guidelines sentence can be based on unreasonable pre-indictment delay, and even ignoring the government's unrebutted explanation for the delay here, Jimenez-DeGarcia's argument fails for a fundamental reason: he cannot show prejudice because he cannot show that absent the delay his federal sentence would have been ordered to run concurrent with his state sentence. The circuits that approve the imposition of a lower sentence based on pre-indictment delay have relied on the defendant's "missed opportunity" to receive a concurrent sentence from the federal district court. *See, e.g., United States v. Los Santos*, 283 F.3d 422, 428 (2d Cir. 2002); *United States v. Brye*, 146 F.3d 1207, 1214 (10th Cir. 1998). In the similar context of proving a due process violation based on pre-indictment delay, the defendant bears the burden of demonstrating "actual and substantial" prejudice from the delay. *See United States v. Sowa*, 34 F.3d 447, 450-51 (7th Cir. 1994).

Jimenez-DeGarcia cannot prove prejudice because, absent the delay, the sentencing judge would *not* have imposed a concurrent sentence. Judge Adelman could not have been more clear on this point, explaining that a concurrent sentence would have "failed to treat the re-entry offense as a distinct violation of the law, and failed to produce a total sentence sufficient to satisfy the purposes of sentencing." This statement is entirely consistent with U.S.S.G. § 5G1.3, which governs the imposition of concurrent sentences. And it means that any delay in bringing him to court did not prejudice Jimenez-DeGarcia's federal sentence.

That Judge Adelman would not have imposed a concurrent sentence does not put to rest all of Jimenez-DeGarcia's arguments: he raises two more. First, he argues that he deserved a shorter sentence because absent the government's delay, the federal court might have sentenced him before the state court did, thereby reducing his criminal history score. And second, he contends that if the federal

proceedings had been quicker, he might have received a concurrent sentence from his state sentencing judge.

The premise for each argument may be correct--without the state conviction, Jimenez-DeGarcia's guidelines range would have been 70 to 87 months instead of 77 to 96 months, and under Wisconsin law, *see* WIS. STAT. § 973.15(2)(a), state judges have discretion to impose concurrent sentences. But for Jimenez-DeGarcia to be *entitled* to a lower sentence based on these arguments, we must assume that absent any delay in bringing the federal charge, the state sentencing proceeding would actually have occurred after the federal sentencing and that the state court would have imposed a concurrent sentence. Jimenez-DeGarcia presents no factual support for either assumption. Likewise, he cites no precedent, and we have found none, to support the proposition that a district court can appropriately base a below-guidelines sentence on speculation about the timing of a state-court conviction or sentencing practices in a state court. Because Jimenez-DeGarcia has the burden to prove that he was prejudiced from the delay, *cf. Sowa*, 34 F.3d at 451, speculation alone is not a basis for setting aside his sentence as unreasonable.

Finally, Jimenez-DeGarcia all but concedes that the postindictment "delay" (from January 2006 to arraignment in August 2006) is irrelevant to the issue of a sentence reduction. Aside from this time period being *after* indictment, he acknowledges that his rights under the Interstate Agreement on Detainers, even if he had invoked them, could not have materially hastened his arraignment.

Because the district court imposed a reasonable sentence, we AFFIRM.