GREENAWAY, JR., Circuit Judge,
dissenting with whom SMITH, SHWARTZ and SLOVITER, join, and with whom FUENTES, Circuit Judge, joins in part.
In our system of jurisprudence, we examine our principle, consider the facts and the law and make decisions. The venerable principle of stare decisis requires reexamination not when we come up with a *260 better mouse trap but when there is a principled basis for change. See Arizona v. Rumsey, 467 U.S. 203, 212, 104 S.Ct. 2805, 81 L.Ed.2d 164 (1984) (“[A]ny departure from the doctrine of stare decisis demands special justification.”); Planned Parenthood of Se. Pennsylvania v. Casey, 505 U.S. 833, 854, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) (“The obligation to follow precedent begins with necessity, and a contrary necessity marks its outer limit.... At the other extreme, a different necessity would make itself felt if a prior judicial ruling should come to be seen so clearly as error that its enforcement was for that very reason doomed.”). Indeed, “the very point of stare decisis is to forbid us from revisiting a debate every time there are reasonable arguments to be made on both sides.” Morrow v. Balaski, 719 F.3d 160, 181 (3d Cir.2013) (Smith, J., concurring).
Our Court, in a unanimous precedential opinion, adopted a procedure for district courts to follow at sentencing a scant six years ago. See United States v. Sevilla, 541 F.3d 226, 230 (3d Cir.2008). Now, without intervening Supreme Court precedent and without a majority of our sister courts, we not only reexamine but indeed create a new procedure that flies in the face of Federal Rule of Criminal Procedure 51, with no compulsion or mandate to do so.
In its attempt to promote judicial economy, the majority ignores the plain language of Rule 51, misreads the state of the law of our sister circuits,[1] and invokes a fundamental change to our sentencing procedures that is both unwarranted and difficult to square with the Supreme Court’s post-Booker jurisprudence. For this reason, I respectfully dissent.[2]
*261 I. The Federal Rules of Criminal Procedure
Under the Rules Enabling Act, Congress vested the Supreme Court of the United States with the authority to promulgate the Federal Rules of Criminal Procedure. See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 406-07, 130 S.Ct. 1431, 176 L.Ed.2d 311 (2010). These rules, which are then enacted by Congress, are legislation and therefore transcend a mere rule of court. Fed.R.Crim.P. 2; see also Fed.R.Crim.P. 1(a)(1) (“These rules govern the procedure in all criminal proceedings in the United States district courts, the United States courts of appeals, and the Supreme Court of the United States.”).
Because the Federal Rules of Criminal Procedure are legislative enactments, “we turn to the ‘traditional tools of statutory construction,’ ... in order to construe their provisions.” Beech Aircraft, Corp. v. Rainey, 488 U.S. 153, 163, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988) (quoting INS v. Cardoza-Fonseca, 480 U.S. 421, 446, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987)). “We begin with the language of the Rule itself.” Beech Aircraft Corp., 488 U.S. at 163, 109 S.Ct. 439.
Federal Rule of Criminal Procedure 51, which governs how parties preserve claims for appeal, states that “[a] party may preserve a claim of error by informing the court — when the court ruling or order is made or sought — of the action the party wishes the court to take, or the party’s objection to the court’s action and the grounds for that objection.” Fed. R.Crim.P. 51(b).
Textually, Rule 51(b) contemplates that parties may liberally preserve claims for appeal. The rule states that a party preserves a claim by informing the court “the action the party wishes the court to take ... when the court ruling or order is made or sought [.]” Id. (emphasis added). While “made” denotes that a request (e.g., objection) can be raised after the order, the “or sought” language anticipates a party preserving a claim prior to the court’s ruling. “To seek” means “to ask for” or “to try to obtain,” which necessarily takes place pri- or to the court’s ruling. See, e.g., Webster’s Ninth New Collegiate Dictionary 1063 (1983) (“to ask for”); The Random House Dictionary of the English Language 1733 (2d ed. 1987) (“To try to obtain”).
The majority gives no more than lip service to the text of Rule 51(b). In a footnote, the majority claims that the new rule implemented by the court today is “consistent” with Rule 51(b) on grounds that the procedural objection can be raised for the first time only after the sentence is pronounced without adequate explanation.[3] Such a reading can be sustained only by conflating “objection” with “the action the party wishes the court to take”, which defies an established canon of statutory interpretation that terms connected by a disjunctive are to be given separate meaning. See Reiter v. Sonotone Corp., 442 U.S. 330, 339, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979) (“Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate mean *262 ings[.]”). Under the plain language of Rule 51, an objection — which can indeed only take place after the court’s ruling — is only one way, not “the” way, to preserve a claim. The rule expressly provides that parties may also preserve a claim for appeal when they inform the court “of the action the party wishes the court to take[.]” Fed.R.Crim.P. 51(b).
That is exactly what Flores-Mejia has done here. In his sentencing memorandum dated July 19, 2012 (App.51, 55, 59), and again at the sentencing hearing on July 26, 2012, defense counsel urged the Court to “consider [Flores-Mejia’s] actions in proffering [to the Government].” (App. 102-03.) It is settled law that consideration of § 3553(a) factors requires the District Court to supply an explanation. See United States v. Begin, 696 F.3d 405, 411 (3d Cir.2012) (holding that in order to consider the relevant sentencing factors set forth in 18 U.S.C. § 3553(a), the District Court must “acknowledge and respond to any properly presented sentencing argument”) (internal quotation marks omitted); see also United States v. Grier, 475 F.3d 556, 571 (3d Cir.2007) (“The record must disclose meaningful consideration of the relevant statutory factors[.]”). Because Flores-Mejia “sought” the District Court to “consider” § 3553(a) factors, his claim was preserved under Rule 51, regardless of whether the District Court ruled upon his request.
What the majority calls an “objection” is in reality an “exception,” which Rule 51(a) expressly declared as “unnecessary.” Fed.R.Crim.P. 51(a); see also United States v. Bartlett, 567 F.3d 901, 910 (7th Cir.2009) (Easterbrook, J.) (“We put ‘object’ in scare quotes because remonstration with the judge is not an objection as usually understood.... Such a complaint is properly called, not an objection, but an exception.”). Prior to the adoption of Rule 51(a), lawyers followed a common law tradition of taking “exception” to an adverse ruling to preserve an issue. Robert E. Keeton, Trial Tactics and Methods § 4.12, at 190-91 (2d ed.1973). This tradition was a way of creating a record for effective appellate court review. Id. When verbatim transcripts became available for modern judicial proceedings, the formalistic “exception” requirement was no longer necessary for appellate courts to effectively review cases. See Benjamin K. Raybin, Note, “Objection: Your Honor is Being Unreasonable!” — Law and Policy Opposing the Federal Sentencing Order Objection Requirement, 63 Vand. L.Rev. 235, 252 (2010). It was for this reason that the practice of taking exceptions was abandoned in civil cases when Congress approved Federal Rule of Civil Procedure 46 (in 1937) and the Federal Rules of Criminal Procedure 51 (in 1944). Id.; see also Bartlett, 567 F.3d at 910 (“[T]he rules do not require a litigant to complain about a judicial choice after it has been made.”); United States v. Cunningham, 429 F.3d 673, 679-80 (7th Cir.2005) (Posner, J.) (“[A] lawyer in federal court is not required to except to rulings by the trial judge.”) (citing Fed.R.Crim.P. 51(a)).
The majority insists that a party must re-raise any procedural objection after the pronouncement of the sentence to avoid plain error review. No such requirement appears in Rule 51. In adopting this “new rule,” the majority renders superfluous both Rule 51(a)’s elimination of the practice of taking exceptions and Rule 51(b)’s disjunctive text “or sought.” Although courts are to avoid a construction of a statute that would make another provision superfluous, the majority ignores this basic rule of statutory construction. See Hohn v. United States, 524 U.S. 236, 249, 118 S.Ct. 1969, 141 L.Ed.2d 242 (1998) (noting its “reluctan[ce] to adopt a construction making another statutory provision superfluous”); see also Colautti v. Franklin, 439 *263 U.S. 379, 392, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979) (characterizing as “elementary[5]’ the “canon of construction that a statute should be interpreted so as not to render one part inoperative”).
Rule 51 cannot be deemed superfluous based on the procedural/substantive dichotomy. While it is true that this Court has developed jurisprudence highlighting the difference between procedural and substantive reasonableness claims, the Federal Rules of Criminal Procedure do not make such a distinction. The majority’s reading carves out certain categories of claims that cannot be preserved when the ruling “is sought”, failing to give meaning to each word of Rule 51(b). In my view, this reading cannot survive scrutiny by the Supreme Court. See Shady Grove Orthopedic Associates, P.A., 559 U.S. at 406, 130 S.Ct. 1431 (interpreting the Federal Rules of Civil Procedure stating that courts “cannot contort its text[.]”); Reiter, 442 U.S. at 339, 99 S.Ct. 2326 (“In construing a statute we are obliged to give effect, if possible, to every word Congress used.”).
II. Judicial Economy
The majority attempts to rationalize its reading of Rule 51 by pointing to judicial economy. While the concern is noble, the effect of the new rule on judicial economy is at best ambiguous.
First, contrary to the majority’s concern about defense counsel “sandbagging” district courts, parties already have an incentive to bring errors to the district court’s attention even when a claim is preserved.[4] This is because they have a better shot at correcting errors there than before an appellate court that must review under a deferential, reasonableness standard. United States v. Tomko, 562 F.3d 558, 564 (3d Cir.2009) (assessing the reasonableness of a sentence under the deferential “abuse of discretion” standard of review). Under the reasonableness standard, an appellate court reverses only when the district court’s decision cannot be located within the range of permissible decisions or is based on a legal error or clearly erroneous factual finding. See id. While the plain error standard certainly heightens the penalty for failure to preserve an issue, the majority’s approach does not explain why an abuse of discretion standard cannot deter parties from “playing possum.” Certainly, there is no evidence, anecdotal or otherwise, to support the majority’s assessment.
Second, requiring an objection for preservation purposes will slow down the process in the initial district court proceeding, even when it may not be necessary. As the Seventh Circuit puts it, “[t]o insist that defendants object at sentencing to preserve appellate review for reasonableness would create a trap for unwary defendants and saddle busy district courts with the burden of sitting through an objection— probably formulaic — in every criminal case.” United States v. Castro-Juarez, 425 F.3d 430, 433-34 (7th Cir.2005); see also United States v. Lynn, 592 F.3d 572, 578-79 & n. 3 (4th Cir.2010) (observing that the objection requirement “could degenerate into a never-ending stream of objections after each sentencing explanation”). All this presumably after a full airing out of the issue at hand both in the *264 papers and at argument. This concern is especially alarming because substantive and procedural reasonableness claims are not easily divisible. Compare Rita v. United States, 551 U.S. 338, 365, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007) (Stevens, J„ concurring) (observing that Booker “plainly contemplated that reasonableness review would contain a substantive [as well as procedural] component”), with Rita, 551 U.S. at 382-83, 127 S.Ct. 2456 (Scalia, J„ concurring in part and concurring in the judgment) (observing that reasonableness of sentencing ruling should be reviewed on purely procedural grounds). See also Vonner, 516 F.3d at 398 (Clay, J., dissenting) (“[P]rocedural reasonableness and substantive reasonableness are simply two aspects of the overall reasonableness.” (internal quotation marks omitted)). The difficulty of parsing out the differences between substantive and procedural claims incentivizes counsel to complain about every ruling made by the district court.
Third, requiring an objection to preserve issues for an appeal promises to give birth to an industry of collateral “ineffective assistance of counsel” claims that are likely to arise out of defense counsel inevitably failing to object after sentencing in some cases. See, e.g., Raybin, Note, 63 Vand. L.Rev. at 262 (“By creating a new procedure for attorneys to follow, courts also create a new way in which attorneys can render ineffective assistance of counsel.”). This is not a mere theoretical inquiry, given our Court’s previous ruling that failing to object in certain circumstances may constitute ineffective assistance of counsel. See, e.g., United States v. Otero, 502 F.3d 331, 336 (3d Cir.2007) (“There is no sound strategy in counsel’s failure to object to the 16-level enhancement in the PSR.... We therefore find counsel’s performance deficient.”).[5]
To be sure, requiring procedural reasonableness objections may facilitate speedier resolution of errors in certain circumstances, sparing everyone the lengthy process of appellate review. If alacrity be our keystone, I shall step aside, but in the grand scheme of our criminal justice system, judicial economy should not and cannot rule our considerations.
III. Appellate Review Post -Booker
Finally, the holding rendered by the majority today represents a fundamental change in our jurisprudence that is difficult to square with the Supreme Court’s post -Booker jurisprudence.
Our Booker obligation is to “review sentencing decisions for unreasonableness.” United States v. Booker, 543 U.S. 220, 264, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). In keeping with this guidance, this Court has developed a two-part test, reviewing for “procedural error at each step of the district court’s sentencing process ... then we move forward to the second stage [reviewing] the substantive reasonableness of the sentence.” Begin, 696 F.3d at 411; see also Rita, 551 U.S. at 356, 127 S.Ct. 2456 (instructing that a sentencing court should “set forth enough to satisfy the appellate court that [he] has considered the parties’ arguments and has a reasoned basis for exercising his own legal decision-making authority”).
Under the plain error review adopted by the majority today,[6] our hands will be tied *265 when the district court fails to produce enough of a record for meaningful procedural review, for we will have no basis to ascertain whether a potential error could have “affected the outcome of the district court proceedings.” Dragon, 471 F.3d at 505 (quoting Olano, 507 U.S. at 732, 113 S.Ct. 1770). This is plainly at odds with the Supreme Court’s instructions that the record “make[ ] clear that the sentencing judge considered the evidence and arguments.” Rita, 551 U.S. at 359, 127 S.Ct. 2456.
For example, assume that the district court commits a procedural error — by incorrectly calculating the defendant’s advisory Guidelines range.[7] Let us even assume that the district court was generous enough to ask, after the imposition of the sentence, if counsel had any objections. Defense counsel answered “no” to that question. Under the majority’s hard-line rule, the mere fact that the defense counsel answered “no” absolves the district court of what we have time and time again re-affirmed as the district court’s responsibility under Gunter. This is particularly alarming because of the unique, two-step review process developed in our circuit. Our substantive review is “highly deferential,” only because of “our insistence, as part of our procedural review, that the district court produce a record sufficient to demonstrate its rational and meaningful consideration of the § 3553(a) factors.” Begin, 696 F.3d at 411. The majority’s opinion strips future panels of meaningful authority to ensure that district courts follow the Gunter steps, while leaving the deferential substantive review standard intact. In effect, this approach undermines our ability to “review sentencing decisions for unreasonableness.” Booker, 543 U.S. at 264, 125 S.Ct. 738.
The insistence that a claim be lodged “contemporaneously” with a sentencing decision exacerbates the problem. The majority’s approach, in essence, picks a narrow and arbitrary point in time at which a defense counsel must raise (or in some instances, re-raise) a point, building an additional stricture that defeats a defendant’s ability to successfully appeal. Sentencing proceedings are highly charged and fraught with emotion, particularly after the sentence is imposed. It is unwise to burden counsel with the additional obligations to engage in a reasoned analysis of the district court’s sentencing explanation and then interpose an objection that was already asserted, all while attending to an emotional client and raising residual issues, like surrender dates and place of incarceration.
Under the majority’s framework, future panels of this Court will be forced to make a difficult choice when faced with a district court record that is plainly at odds with our instructions in Gunter: (1) apply plain error review and produce rulings that are likely to be at odds with the guidance from the Supreme Court; or (2) stretch the meaning of “plain error” to ensure that this Court follows the Supreme Court’s post -Booker jurisprudence. Begin, 696 F.3d at 411.
The post-Vonner jurisprudence from the Sixth Circuit gives little reason for optimism. In U.S. v. Wallace, for instance, the Sixth Circuit was asked to review a record from the District Court that did not *266 “specifically mention any of the 3553(a) factors.” 597 F.3d 794, 804 (6th Cir.2010). Even after acknowledging that “plain error review should be extremely deferential to the sentencing judge”, the court found that the case “must be remanded for re-sentencing.” Id. But as Judge McKeag-ue’s concurring opinion insightfully points out, it is untenable to conclude that the district court’s lack of explanation impugned the “fairness, integrity or public reputation” necessary to constitute plain error. 597 F.3d at 811 (McKeague, J., concurring).
I end where I began. Stare decisis counsels against “overruling] our circuit precedent just to move from one side of the conflict to another.” United States v. Corner, 598 F.3d 411, 414 (7th Cir.2010) (en banc). Yet, despite the plain text of Rule 51(b) and the absence of any intervening authority from the Supreme Court, the majority jumps to the other side. What could confuse our district court colleagues more than revisiting matters without good cause to do so and establishing a new procedure that digress from congres-sionally sanctioned rules with no substantive or procedural infirmity? I cannot partake in such an enterprise, and therefore respectfully dissent.

. The majority would have us believe that a tsunami of well-reasoned opinions has swept across our sister circuits, requiring us to question our own precedent; however, close reading of case law reveals that this assessment is mistaken. For instance, the D.C. Circuit’s explications provide no succor to the majority’s view, given that the court has rendered internally inconsistent decisions. Compare, e.g., United States v. Wilson, 605 F.3d 985, 1034 (D.C.Cir.2010) ("Where a defendant failed to make a timely objection to the alleged procedural error in the district court, however, our review is for plain error.”), with United States v. Tate, 630 F.3d 194, 197-99 (D.C.Cir.2011) (applying the "abuse of discretion” standard to review a claim that a "sentence is procedurally unreasonable, in violation of due process and the requirement of section 3553(a) that a sentence be no greater than necessary”) and United States v. Bras, 483 F.3d 103, 113 (D.C.Cir.2007) (applying the reasonableness standard of review by rejecting the government’s insistence that the court "may review this claim only for 'plain error,’ because Bras did not ... object that the court did not adequately consider the factors set forth in § 3553” (internal quotation marks omitted)). The majority also omits cases that have unequivocally rejected the approach adopted today. See, e.g., United States v. Castro-Juarez, 425 F.3d 430, 434 (7th Cir.2005) ("Since the district court will already have heard argument and allocution from the parties and weighed the relevant § 3553(a) factors before pronouncing sentence, we fail to see how requiring the defendant to then protest the term handed down as unreasonable will further the sentencing process in any meaningful way.”). Finally, the case law cited by the majority in support of their new rule, except for United States v. Vonner, 516 F.3d 382, 391 (6th Cir.2008) (which is addressed below), completely fails to take into account Rule 51’s procedure for preserving an issue for appeal. As a result, these cases do not provide a reasoned analysis supporting the majority’s approach.

. Sevilla provided clear guidance in this post-Booker world, the District Court considered all of the arguments raised at sentencing. The Government determined that the information Flores-Mejia had provided did not warrant a departure motion under U.S.S.G. 5K1.1. When the District Judge said "anything else”, he had already heard from both sides. Therefore, I would affirm the sentence.

. This line of reasoning follows the approach developed by Judge Sutton’s majority opinion in Vonner, which (unsurprisingly) also pays little homage to the text of Rule 51. Vonner, 516 F.3d at 391. The opinion there acknowledges Rule 51. Id. at 391. But the court then supports its application of plain error review of the district court's failure to address the four grounds Vonner specifically raised for a downward variance by positing a hypothetical where the mistake had never been presented to the district court. Id. at 392. The hypothetical, however, lends no support because it is factually distinguishable from what actually occurred in the case.

. In Puckett v. United States, the Supreme Court instructed that a party cannot "remain[] silent” and "sandbag” a court by failing to object and avert plain error review. 556 U.S. 129, 135, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009). Unlike Puckett, where the defendant never raised the issue at all in the district court, when a party raises his argument in writing prior to sentencing and orally advocates for particular action at the sentencing hearing, it is inaccurate to contend that the party is sandbagging the sentencing court and that the issues he squarely raised are subject to plain error review.

. Our discussion does not address the circumstances when defense counsel fails to raise a claim for a court to consider in writing and before actual sentencing.

. An error is plain if it is "clear” or "obvious,” "affects substantial rights,” and "affects the fairness, integrity or public reputation of judicial proceedings.” United States v. Dragon, 471 F.3d 501, 505 (3d Cir.2006) (quoting United States v. Olano, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (alterations and internal quotation marks omitted)). An error "affects substantial rights” when it is prejudicial, that is, when it "affected the out *265 come of the district court proceedings.” Dragon, 471 F.3d at 505 (quoting Olano, 507 U.S. at 734, 113 S.Ct. 1770).

. Correct calculation of the defendant's advisory Guidelines range is the first procedural step mandated by our seminal post-Booker opinion. United States v. Gunter, 462 F.3d 237, 247 (3d Cir.2006) ("[0]ur post-Booker precedent instructs district courts ... to calculate a defendant’s Guidelines sentence precisely as they would have before Booker.") (internal citations omitted).